Staples, J.
The plaintiff in the court below, who is the defendant in error here, is the holder of four notes or certificates of indebtedness, executed by the town of Danville in 1863, amounting in the aggregate to twelve thousand dollars, and maturing ten and twenty years after date, with interest thereon, payable .semi-annually. In the year 1868 the plaintiff instituted actions of trespass on the case in the Circuit court of Danville, for the recovery of the interest which had accrued, upon these notes from the 1st *3 day of January 1865, to the 1st day of January 1868. The cases were subsequently removed to the Circuit court of Richmond. At the June term 1878 of that court, the defendant, in addition to the general issue, tendered two pleas of usury in writing, which, on motion of the plaintiff, were rejected; and the defendant excepted.
After the rejection of these pleas, it was agreed by the parties that a jury should be waived, and all matters of law and of fact submitted to the court upon the facts agreed: whereupon the court rendered judgment for the plaintiff. To that judgment a writ of error was awarded by a judge of this court.
The chief, if not the only question for our determination, is the right of the town of Danville to rely upon the defence of usury in these actions. The decision of that question depends upon an act passed March 22d, 1873, and found in the Revised Code of 1873, page 544. It is in these words: “Ho corporation shall hereafter interpose the defence of usury in any action; nor shall any bond, note, debt or contract of such corporation be set aside, impaired or adjudged invalid by reason of anything contained in the laws prohibiting usury.” It is claimed by the counsel for the defendant, that this section applies only to causes of action arising, and contracts made, after its adoption; and consequently, the notes or certificates in controversy are not embraced by its provisions. The learned counsel relies strongly upon the well settled rule, that statutes are to be construed as prospective in their operation, unless the language plainly shows the intention of the legislature that they should have a retrospective effect. In support of this view he has cited numerous authorities, which undoubtedly sustain the proposition that the courts will not so con *4 s*rue a statute as to give it a retrospective operation, unless there is something on the face of the enactment putting it beyond a doubt that such was the purpose of the legislature. Upon this point there can be no solid ground for controversy. The question is, whether the'present enactment furnishes unmistakable evidence of the legislative purpose to-give it a retroactive operation and effect.
It will be observed that the words used are very comprehensive. “Ho corporation shall hereafter interpose the defense of usury in any action.” The-words, “any action,” necessarily include suits instituted before as well as after the passage of the act. There is nothing in the context to give them a more-limited operation. The defense is prohibited in all cases. In order to adopt the construction insisted on by the defendant, other words must be incorporated into the body of the act so as to make it read, “no corporation shall hereafter interpose the defense of' usury in any action upon a contract hereafter made.”' But clearly the legislature did not intend so to confine-the effect of the enactment. Had such been the purpose, nothing would have been easier than to have used words appropriate to that object. If any doubt upon this point existed, it will be removed by reference to the next clause in the same section: “Hor shall any bond, note or debt, or contract of such corporation, be set aside, impaired or adjudged invalid by reason of anything contained in the laws prohibiting usury.” Ho distinction is made between contracts entered into before and after the statute: whenever made, they shall not be adjudged invalid by reason of anything contained in the usury laws. The legislature having thus declared, in the most unequivocal terms, that no contract of a corporation *5 •shall be deemed invalid because it may be usurious, it is impossible for the courts, without the grossest perversion of language, to hold that those contracts only are meant which are entered into after the law is passed.
It must not be forgotten that the first clause of the section, already quoted, is a literal copy of a New York statute upon the same subject. The identity of language, used in both statutes, shows that the framers of our act had before them the New York law, and intended to adopt it without change or qualification. In Curtis v. Leavitt, 15 New York R. 1, a very noted case, this statute received a very careful consideration. All the judges agreed in giving it a retrospective effect, so that securities, to an amount exceeding a million of dollars, were held to be valid, though utterly void when issued, «by reason of the usurious taint with which they were infected.
It is not to be supposed that the legislature incorporated into our laws an important statute of another state in entire ignorance of the interpretation given to it by the eourts of that state. It must be presumed rather, that the legislature in adopting the precise phraseology, intended to adopt along with it the interpretation also.
I shall have occasion hereafter to refer to a number of cases in other states involving the constitutionality of statutes giving validity to antecedent usurious contracts. The language of some of these statutes is certainly not more comprehensive than that of our act; and yet the eourts there experienced no difficulty in giving them a retrospective operation and effect. The limits assigned to this opinion will not justify ■any citations of these statutes. I must thei’efore nontent myself with this simple reference to them, *6 sa^s^e<i that upon examination they will sustain the-view I have taken.
The learned counsel who argued the case here for-the defendant referred to the 18th section of chapter-^0<^e I860. The learned counsel obviously did not attach much importance to this section, although it seems to have been relied upon elsewhere as decisive of the case. I do not give the exact words ofthe section, but it substantially provides that no riew law shall be construed to repeal a former law as to-any act done, or right accrued, under the former law, or in any way whatever to affect any act done, or-right accrued, under the former law.
In construing this section, it is necessary to consider also the preceding one, which provides that this .rule of construction shall not be adopted, if it would be inconsistent with the manifest intention of the-legislature. In other words, the two sections taken together mean no more than that a new law shall not be construed to affect any right accrued under a former law, unless such is the manifest purpose of the legislature. A rule of construction which would-always prevail in regard to vested rights of a civil-character independently of any statutory enactment-on the subject.
How if the view already presented -in regard to the statute of March 23, 1873, be correct, if that statute-is plainly retroactive in its operation, and was so intended by the legislature, then the 18th section does-not apply to it, because it would be inconsistent with-the manifest purpose of the legislature to give it such application. To adopt' any other rule would be to declare that one legislature having adopted a general statutory rule of construction, no succeeding legislature is authorized to depart from that rule.
*7 It is worthy of observation that the provisions of the 18th section were taken from the revised statutes of New York and Massachusetts. The 35th section of the New York statutes, although not identical with the language of the 18th, is substantially the same in its operation and effect. That section, the 35th, was in force long anterior to the case of Curtis v. Leavitt, and yet the Supreme court of New York did not regard it sufficient to prevent the retroactive operation of their statute in relation to the defence of usury by corporations. As already stated, the first clause of our act is a literal copy of the New York statute.
For these reasons I am satisfied that all contracts of corporations, whether entered into before or subsequent to the passage of the act in question, must be held to be comprehended by its provisions. Thus construed, is the act constitutional? This is the important question for our consideration. "When this subject was first under discussion my own convictions were very decided that this legislation could not and ought not to be sustained, as applied to antecedent contracts. It seemed to me not only unjust, but contrary to the first principles of the constitution, for the legislature to attempt to divest a right accrued under existing laws; and it mattered but little whether it was a right to defeat an action or maintain it; to prevent a recovery or enforce it. And although no specific provision of the constitution could be shown expressly forbidding such legislation, it had the appearance of being repugnant to the entire spirit and scope of that instrument.
Subsequent investigation has, however, satisfied me that my own views on this subject were in conflict *8 the opinions of many able judges and commentators, and an imposing array of well considered cases.
The reasoning employed in these cases, though not always satisfactory, and the great weight of authority uPon the subject, have at least created doubts and difficulties in my own mind which ought to be controlling in passing upon an act of the legislative department. A conscientious judge will not, in the face of a current of authorities, almost uniformly tending in the same direction, pronounce against the constitutionality of a law unless upon full examination his conviction is very clear that it is plainly repugnant to the constitution. When he finds himself opposed by a long array of distinguished names; when he sees that the wisdom of the legislature and the learning of the judiciary are against him, he ought to retrace his steps, reexamine his ground, and ascertain, if possible, whether there is not some radical defect in the process of reasoning by which he has reached his conclusion. He should be careful to inquire whether indeed he is not substituting his own preconceived opinions of what may be right and proper in the particular case, as a rule or standard for the determination of a mere question of constitutional power. It should never .be forgotten that the courts cannot deny validity to an act of the legislature, because it may seem to the judges that injustice has been done or sound policy disregarded. As has been well said, the judiciary cannot run a race of opinion with the law-making power upon points of right, reason and expediency. Cooley on Con. L. 168. Such an assumption would lead to dangerous conflicts of authority, and practically result in the absorption by the judiciary of the other great departments of the government.
*9 The legislature represents the sovereign authority of the people, except so far as restrictions are enforced by the constitution in express terms or by strong implication. We look to the constitution of the state not for grants of power but for limitations. When the prohibition is not found in the language of that instrument, or in its frame work and general arrangement, there is no solid ground to pronounce the enactment void. The infraction must be clear and palpable. In the language of Judge Marshall, the question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom if ever to be decided in the affirmative in a doubtful case. The opposition between the constitution and the law should be such, that the judge feels a strong and clear conviction of their incompatibility with each other. Fletcher v. Peck, 6 Cranch R. 87, 128.
Bearing these principles in mind, we are to consider whether the statute already cited is repugnant to the constitution of the United States or of the state of Virginia.- Two provisions of the constitution of the United States have been invoked as prohibitive of this sort of legislation. One of these is the clause declaring that no state shall pass any ex post facto law. In answer to this, it is sufficient to say, that the phrase ex post facto law, as used in the constitution, is not applicable to civil, but only to criminal and penal laws, which impose a punishment for previous acts which were not punishable at all when committed, or not punishable to the extent or in the manner prescribed. So that ex post facto laws relate to penal and criminal proceedings which inflict punishment or forfeitures, and not to civil proceedings which affect private rights retrospectively. *10 This doctrine has been solemnly • settled by the Supreme court in numerous cases, and is now the accepted rule of construction. Calder v. Bull, 3 Dall. R. 386; Watson v. Mercer, 8 Peters R. 88, 110.
The other provision of the constitution relied upon is that which prohibits a state from passing any law impairing the obligation of a contract. It seems very clear, however, that the statute, so far from invalidating the contract, upholds and sustains it. In the case of Satterlee v. Matthewson, 2 Peters R. 380, Mr. Justice Washington, commenting upon an act of the Pennsylvania legislature to which the same objection was-urged, said: “Row this law may be censured as an unwise and unjust exercise of legislative power, as retrospective in its operation, as the exercise by the legislature of judicial functions, and as creating a contract where none previously existed. All this may be admitted, but the great question which we are now considering is, does it impair the obligation of a contract ? It is not easy to perceive how a law which gives validity to a void contract can be said to impair the obligation of that contract. It cannot be intended that to create a contract between the parties where none existed, and to impair one, mean the same thing.”
This case, and indeed all the cases, establish the position that even though a statute may take away vested rights by reason of its retrospective operation, it cannot, for that reason merely, be treated as repugnant to any provision contained in the constitution of the United States. Charles River Bridge v. Warren Bridge, 11 Peters R. 420. In considering this question then, I think we may safely discard from our view the constitution of the United States.
The next inquiry is as to the constitution of Yir *11 ginia. Is the statute in contravention of any of its provisions? I do not understand the learned counsel for the defendant as contending that the act in question violates any specific provision of that instrument. His proposition is substantially, that the contract here when made was usurious and void; and there was then vested in the defendant a right so to declare it; that by the statute now under consideration, he has been deprived of this right; that a law which thus takes away a valuable and a vested right is an exercise of arbitrary power, unjust in itself, and contrary to the fundamental principles of the social compact.
How, let it be conceded there are restrictions upon the legislative power not found expressly enumerated in the constitution; that a law may not infringe upon any specific provision of that instrument and yet it may involve so flagrant an abuse of power that it is the imperative duty of the judiciary to interpose and arrest its execution ; still it must be also conceded that when we depart from the express limitations of the constitution, and venture into the vast and unexplored region of implied restrictions, the legislative usurpation ought to be very clear, palpable and oppressive to justify the interposition of the judiciary. All admit that it is not competent for the legislature by retroactive laws to interfere with vested rights. But the inquiry still recurs, what are these vested rights that are secure against legislative invasion; that the legislature has the constitutional power to pass retrospective laws, laws affecting vested rights, no one will deny who is familiar with the jurisprudence of the country. According to Chancellor Kent* statutes which go to confirm existing rights and in furtherance of the remedy, by curing defects *12 an<^ adding to the means of enforcing existing obligations, have been held clearly valid, when just and reasonable, and conducive to the general welfare, even though they might in some degree in-upon vested rights. 1 Kent’s Com., page 456; Underwood v. Lilly, 10 Serg. & Rawle 101; Tate v. Stooltzfoos, 16 id. 35; Bleakney v. F. and M. Bank, 17 id. 64; Hepburn v. Curts, 7 Watts R. 300; Foster v. Essex Bank, 16 Mass. R. 245; Oriental Bank v. Freeze, 18 Maine R. 109; Townsend v. Townsend, Peck (Tenn.) R. 1; Bell v. Perkins, Peck’s R. 266; State v. Bermudez, 12 Louis. R. 352; Syracuse City Bank v. Davis, 16 Barb. R. 188; Rich v. Flanders, 39 N. Hamp. R. 304; Schenley v. Commonwealth, 36 Penn. State R. 29; Goshen v. Stonington, 4 Conn. R. 209; Wilkinson v. Leland, 2 Peters R. 627; Langdon v. Strong, 2 Verm. R. 234; Watson v. Mercer, 8 Peters R. 88.
In his work on constitutional limitation, Judge Cooley enumerates a number of restrospective statutes, the constitutionality of which is almost universally conceded. Among these are statutes validating antecedent illegal marriages, confirming city ordinances which had failed to take effect for want of registration, and by reason of such confirmation establishing liens for tax assessment upon private property, statutes abolishing penalties and forfeitures, and taking away rights of appeal in pending cases; all of which, in a greater or less degree, interfere with vested rights. After citing these and other illustrations of retrospective laws, the author proceeds as follows: “On the same principle legislative acts validating invalid contracts have been sustained, when these acts go no farther than to bind a party by a contract which he has attempted to enter into, but which was invalid by reason of some personal inability on his part to make *13 it, or through neglect of some legal formality, or in consequence of some ingredient in the contract forbidden by law, the question which they suggest is of policy and not of constitutional power.” Cooley, 373-’4.
_ . In support of this view the learned author mentions a number of cases, some of which I shall have occasion to consider in the course of this opinion. One of the most important of these is the case of Curtis v. Leavitt, 15 New York R. 1, heretofore mentioned in another connection, justly celebrated, not only for the variety and importance of the questions involved and the magnitude of the subject of controversy, but for the vast ability and learning employed in the discussion by both bench and bar. Mr. Justice Page said p. 229: “The defence of usury is in the nature of a penalty or forfeiture, and may at any time be taken away by the legislature in respect to previous as well as subsequent contracts, without trenching upon any vested rights. A proposition that a party can have a vested right in enforcing a penalty or forfeiture, against which it is the office of a court of equity to relieve, is a legal solecism. Statutes of usury are highly penal in their character, and the defence of usury has always been regarded as an unconseientious defence, and has never received the favor of either courts of law or equity.” All the judges sitting, seven in number, concurred substantially in this view. Among these were Judges Selden and Comstock, universally respected for their soundness of judgment and the extent and variety of their legal attainments. The former said: “Usury being a mere statutory defence, not founded upon any common law right, either legal or equitable, it was clearly within the power of the legislature to take it away.” See also Washburne *14 v. Franklin, 13 Abbott Prac. P. 140, and 35 Barb. R. 599.
The decisions of the Ohio courts are in entire harnaony with those of New York. I do not deem it necessary, however, to do more than make a brief reference to the ease of Lewis, trustee v. McElvain, 16 Ohio R. 347, 599. It seems that the Mechanics and Traders Bank of Cincinnati was an unauthorized banking company, and all bills and notes made for the purpose of being discounted there were declared to be unlawful and utterly void. The bank transferred all its assets to a trustee, including notes discounted there in violation of law. ' The legislature of Ohio passed an act authorizing the trustee to institute suit upon these notes in his own name against the debtors; and it was farther provided it should not be lawful for the debtors to set up in their defence that these notes were void on account of being in violation of any statute law of the state, or ■on account of their being contrary to public policy. It was objected that this legislation was unconstitutional, inasmuch as the effect would be to give validity to contracts illegal and void under laws in force when they were made. Hitchcock, J. speaking for the court said: “I can never consent to declare an act of the legislature void on account of violating the constitution, unless it is palpably both against the letter and spirit of that instrument. . So long ■as there is the least doubt upon the subject the law must be enforced. How what provision of the constitution of Ohio is violated by this law ? Certainly it violates no contract. Its very object is, that the contract may be enforced. But it is said to be a law retrospective in its character. I find nothing in the ■constitution prohibiting retrospective laws. The en *15 actment of ex post facto laws is prohibited, not retrospective. Such laws may be impolitic, but with this as a judge I have nothing to do. This law feres with no vested rights. It merely compels mien to do justice.”
The case of Parmelee v. Lawrence, decided by the Supreme court of Illinois, and reported in 48 Illinois E. 331, the case of Andrews v. Russell, 7 Blackf. R. 474, decided by the Supreme court of Indiana, and the case of Woodruff v. Scruggs, 27 Arkansas R. 26, all involved the constitutionality of statutes giving validity to antecedent usurious contracts. In each case the enactment was strongly assailed as trenching upon vested rights, and in each case its validity was fully sustained by the court.
The decisions of the Maryland courts accord with those already cited. Baugher v. Nelson, 9 Gill’s R. 299, is an example. In that case the point was made that the contract was void for usury, and there was vested in the defendant a right so to declare it. Mr. Justice Martin, in answering this objection, said: “When vested rights are spoken of by the courts as being guarded against legislative interference, they mean those rights to which a party may adhere, and upon which he may insist without violating any principles of sound morality. In the language of Judge Duncan, in Satterlee v. Matthewson, 16 Serg. & Rawle 191, there can be no vested right to do wrong. In the nature of things there can be no vested right to violate a moral duty, or to resist the performance of a moral obligation.” See also Nelson v. Hardesty, 1 Mary. Ch. R. 56.
The Connecticut decisions proceed upon the same ground. In Goshen v. Stonington, 4 Conn. R. 209, Hosmer, C. J. in commenting upon a statute prohibiting *16 the defense of usury as against antecedent contracts, said: “It was no violation of the constitution; it was not a novelty, such exercises of power having been frequent, and the subject of universal acquiescence; and no injustice can arise from having given legal efficacy to voluntary engagements, and from accompanying them with the consequences they always, import.
These questions, and others of a like character, have been perhaps more carefully considered and oftener decided by the courts of Pennsylvania than in any other state. In a long train of decisions pronounced by the ablest jurists of that state, legislation of this kind has been fully sustained as in entire conformity with both federal and state constitutions. I refer particularly to the cases of Hess v. Werts, 4 Serg. & Rawle 356; Satterlee v. Matthewson, 16 Serg. & Rawle 169; Bleakney et als. v. Farmers f Mec. Bank of Greencastle, 17 Serg. & Rawle 64.
To these cases may be added decisions of the Supreme courts of Hew Jersey, Michigan and Iowa. These decisions do not involve the precise points arising in the present case; but the principles they announce apply to the statute in question, and fully sustain its constitutionality. State v. City of Newark, 3 Dutcher’s R. 186; Gibson v. Hibbard, 13 Michigan R. 215; Harris v. Rutledge, 19 Iowa R. 389; State v. Squires, 26 Id. 340.
It thus appears that the constitutionality of this legislation, or legislation of a like character, has been affirmed by learned judges and commentators, by the Supreme courts of ten states, and the declared will of ten legislatures, besides that of Yirginia. Against this formidable array of authorities what have we ? The learned counsel for the defendant has *17 cited a number of cases supposed to give countenance to his position; but it will be found upon a careful examination that very few of them have any direct bearing upon the point in controversy here. The New York decisions referred to, relate principally to statutes affecting the vested rights of husbands in the estates of their wives. They do not in the least conflict with the doctrines laid down in Curtis v. Leavitt.
The cases in the Supreme court of the United States do not touch the point under consideration. The only province of that court is to enquire whether the statute is in conformity with the constitution of the United States. If it is, that court will not pronounce against its validity, because it is repugnant to the constitution of the state.
The cases from Massachusetts and Mississippi upon which so much reliance is placed, were decided upon statutes which attempted to revive certain causes of action already barred by limitation. Legislation of this kind has been generally considered an unconstitutional interference with vested rights. The reason is apparent and is well understood.- The statutes of limitation are essentially statutes of repose; they are founded upon the idea that the party affected has had full opportunity to try his right; that he has lost it by his own conduct, and he has thus vested in his adversary a right of property as complete and perfect as if bestowed by grant. It has been very justly observed, that after the bar is complete, parties are justified in forbearing to take and preserve evidence, and to retain proofs and vouchers, as they otherwise would; and they feel and act upon the conviction that the cause of action is at an end. “ The act of limitations is therefore a law of presumptions: it presumes evidence from length of time which cannot now be produced; pay- *18 merits which cannot now be proved; releases which cannot now be shown.” Barton lessee v. Shall, Peck R. 215; Wright v. Oakley, 5 Metc. R. 410.
These considerations are sufficient to show that the Prineffi^es which apply to rights vested by reason of the operation of the statutory limitation have no just application to laws giving effect to the contract of parties affected by the taint of usury. W e are told, however, that the laws in force when and where the contract is made enter into and constitute a part of it, and consequently the legislature is not authorized so to change or modify those laws as to affect rights vested under them. This is a very just principle in some cases. But it does not admit of universal application. No one seriously maintains that the statutes of limitation in force when a contract is made, or the laws authorizing imprisonment for debt or distress for rent, constitute a part of the contract. And yet they confer important rights, and it is fairly to be presumed, in many cases, parties contract with reference to them. They are, however, often changed and even abolished at the pleasure of the legislature, without a question of the constitutional power to affect existing causes of action.
The cases decided by the Supreme court of the United States to which reference has been made, only affirm the doctrine that the laws in existence when a contract, is made so far enter into and become a part of it that they cannot be changed or abolished to the extent of depriving a party of all remedy to enforce the contract. This is a well established principle, universally recognized by the courts. It proceeds upon the obvious ground that to take away the remedy ■ entirely is, in effect, to impair the obligation off the contract. To impair the obligation of a contract is *19 one thing; to afford a remedy for enforcing it, where none previously existed, is another and very different thing. In Sedgwick’s Treatise on Constitutional Law, page 406, it is laid down that the legislature is competent to give a statute a retrospective operation unless it violates that provision of the federal constitution relating to ex post facto laws and the obligation of contracts, or unless it is repugnant to some express provision of the state constitution, or unless it interferes with vested rights of property, so as not to come within the proper limits of the law-making power. Independently of these exceptions, retrospective laws are within the scope of the legislative authority, and the judiciary will not interfere with them. ífow, it is very clear that statutes taking away the defense of usury as against antecedent contracts are not included in either of the exceptions mentioned. As has already been seen, they do not infringe upon the federal constitution, they certainly do not violate any express provision of the state constitution, and it is equally clear they do not interfere with any vested right of property. •
The usury laws are founded upon considerations of public policy. They are modified from time to time, and even abolished, as the popular sentiment may dictate, or the public interest require. In Virginia, these laws have undergone frequent changes in the last few years. In other states, parties are left free to regulate the subject at their discretion, with a statute fixing the rate of interest in the absence of any express agreement. If no laws upon the subject existed, no one questions that any rate agreed upon by the parties would be lawful and enforced by the courts. The statutes upon this subject are regarded as purely remedial, and sub *20 ject to the modification and control of the legislative department, even as applied to past transactions. This is the view of the courts and legislatures, not only in modern times, but seems also to have prevailed in the earlier history of the state. By the act of. 1734, usurious contracts made previous to the 1st of November, 1734, were legalized to the point of principal and lawful extent. We have no means of ascertaining whether the constitutionality of this statute was ever called in question. The presumption is that it was not, as the legislature fourteen years after, in 1748, re-enacted identically the same provision.
Now it is very clear that the contract being an entire thing, the promise of the debtor to pay the principal and lawful interest cannot be separated from the promise to pay the usurious premium. In either case the promise is utterly void. If, therefore, the legislature may legalize the contract as to the pi’incipal and lawful interest, it may legalize it as to the excess. If it may take away the defense of usury as to part, it may do so as to the entire contract. Courts of equity effect substantially the same results contemplated by these early statutes, in requiring the payment of the principal and lawful interest as a condition of relief; and this too in direct opposition to the statute forfeiting the entire debt. Indeed the charge is sometimes made that the equity courts repeal the statutes prohibiting usury. May not the law-making power apply the same rule to the common law courts; may it not clothe these courts with like jurisdiction and authority to administer relief in the mode exercised by the equity courts? If indeed it may prescribe that the defense of usury shall be taken away as to *21 the principal and lawful interest, it may declare that the defense shall not be made at all.
Under one section of the statute prohibiting usury, if the borrower exhibits his bill and calls for dis-eovery, he is relieved upon the payment of the principal without interest. If he does not seek a discovery, but asks for an injunction to prevent a sale of property, and is full-handed with proof, he is released from the payment of both principal and interest. There can be no question, I imagine, but that this relief may be varied at the pleasure of the legislature, a,nd that it may be applied alike to antecedent and to subsequent transactions. The statutes against usury are regarded in Virginia as highly penal in their character. In Brockenbrough’s ex’ors v. Spindle’s adm’ors, 17 Gratt. 21, 32, the president of this court said: “However small the amount of usurious interest contracted for, and however large the amount of money loaned, the contract is declared void, and the lender forfeits the whole amount of the debt and interest.”
In Crenshaw’s adm’or v. Clark, 5 Leigh 65, 72, Judge Carr speaks of the loss of the debt as a severe penalty, not to be inflicted without clear and strong proof. And in the same case Judge Tucker said: “ The defense goes not merely to absolve the debtor from usurious gain, but to vacate the contract and to annihilate the debt, to take from the usurer his just principal and interest, and put it in the coffers of the debtor to whom it does not fairly belong.”
These citations sufficiently show the light in which the defense of usury has been regarded in Virginia, and that the loss of the debt under that defense is treated as a forfeiture imposed by the stern mandates of the statute.
*22 There may be cases, but I have not seen them—eertaiuly no well considered case—in which it has been held that a party can have a vested right to a forfeiture> contrary to the express terms of the contract, even where the forfeiture results from a violation of' an agreement. Courts of equity often relieve against it upon the application of the debtor. This is a favorite branch of equitable jurisdiction. It is founded upon the idea that although the legal right to the forfeiture is complete, the creditor shall not be permitted to avail himself of it for the purposes of injustice and oppression. This is certainly an interference with vested rights; but they are not of 3uch a character as. are deemed secure against legislative or judicial action. In the language of the Supreme Court of blew Jersey,, “ Courts do not regard rights as vested contrary to the justice and equity of the case.”
In the case of Foster and others v. Essex Bank, 16 Mass. R. 245, it was urged that a statute giving a right of action against certain debtors, which had been lost by the expiration of the bank charter, was retrospective and void. Parker, J., said: “The statute does not interfere with any of the privileges secured by the charter, unless it be considered a privilege to be secured from the payment of debts or the performance of contracts; and this is a kind of privilege which we imagine the constitution was not intended to secure. The truth is, there is no such thing as a vested right to do wrong.”
Unless we suppose it is the deliberate purpose of the debtor when he borrows the money never to return it, the only effect of the statute is to compel him to da what he intended and agreed to do at the time of entering into the contract. It is a legislative declaration that the forfeiture shall not be enforced. It leaves the *23 contract to be executed according to its terms and the original intention of the parties. It violates no vested right, unless it can be considered a vested right of the loaner to vacate his contract and annihilate his debt. Clearly this is not the kind of right the constitution was designed to protect.
This conclusion would not be varied in the slightest degree by the passage of the legislative act after the institution of the suit. It might be argued, with some degree of plausibility, that the plaintiff, having-brought his suit, thereby acquires rights which cannot be affected by subsequent legislation; but it is difficult to perceive in what way an action against a party can confer upon him rights he did not possess independently of such action. If the right to rely upon the defense of usury is not in the nature of a vested constitutional right, secure against legislative invasion, the law-making power may certainly take away the privilege at any time before its actual exercise by the defendant.
Upon this point the authorities are abundant and generally uniform. I do not deem it necessary to do more than refer to a few of the most important. Butler v. Palmer, 1 Hill’s R. 324, 330; Stoever v. Immell, 1 Watts’ R. 258; Curtis v. Leavitt, 15 New York R. 1; Satterlee v. Matthewson, 16 Serg. & Rawle R. 169; Sedgwick on Con. Law 412.
It has been very strongly argued that this law involves the exercise of judicial functions by the legislature. This objection was suggested in some of the cases heretofore mentioned. In others it was not even alluded to. In none of them does it seem to have received much attention, or to have been considered as entitled to much weight.
The case of Griffin’s ex’or v. Cunningham, 20 Gratt. *24 31, is, however, principally relied on in support of the objection. In that case a majority of this court held that an act of the legislature authorizing a review, after the term was ended, of the decrees and judgments rendered by the Court of Appeals, which sat here before the organization of the present government, was in the nature of a judicial act, and was therefore void. This decision was based upon the obvious ground, that a statute which vacates decrees and judgments, grants new trials, or authorizes rehearings, is essentially judicial in its character. Such an act is the very essence of judicial power, and an invasion of the judicial department.
This simple statement demonstrates that the reasoning advanced, and the doctrines asserted in Griffin v. Cunningham, have no application to the subject under consideration. It is proper to add, that two of the judges, Moncure and Anderson, did not concur with the majority in that case. They were of opinion that the statute was in every view constitutional and valid.
All will concede that the line which separates judicial from legislative functions, is, in many cases, shadowy and indistinct, so that it is often a matter of real difficulty to determine within which of the. two classes a particular subject falls.
Statutes affecting limitation of actions, statutes relating to frauds and perjuries, to the admission of parol and written evidence, statutes relating to the registration of deeds, legalizing judicial proceedings, validating defective marriages, and a multitude of others, apply to the transactions and agreements of parties rules of decision wholly different from that which prevailed when the transactions occurred or the agreement was made. And yet these statutes have *25 been fully sustained as clearly within the constitutional competency of the law-making department.
The courts of Pennsylvania decided that the relation of landlord and tenant could not exist in that state under a Connecticut title. The legislature of that state then passed an act which provided that such relation shall exist and be effectual on the trial of cases then pending or thereafter instituted. This act was fully sustained by both state and federal courts, and was actually applied to suits or a suit brought before its .enactment. Judge Cooley expresses the opinion, that as the purpose and intent of the act was to remove from contracts which parties had made, a legal impediment to their enforcement, there would seem to be no doubt, in the light of the authorities, that the conclusion reached was the only just and proper one. Satterlee v. Matthewson, 16 Serg. & Rawle 169.
That case goes much farther than is necessary for the purposes of this. There the statute was intended to apply only to a few cases; here it is general in its character—applicable to all the contracts of corporations made before or after the date of the act. A law which prescribes a general rule for the adjudication of all contracts of a certain character, may,'in its retrospective feature, affect vested rights; but clearly it does not involve the exercise of judicial functions.
It only remains to consider, very briefly, one other objection urged by the learned counsel for the defendant. It is said that the law does gross injustice to the defendant. I must confess it does not so appear to me. Hone of those considerations which prompt the legislature to interpose for the security of the needy debtor against the exactions of the usurer apply to corporations. As a general rule, they sell their bonds *26 in the public market, for the best price such securities will command. In such case there is-no demand for an usurious premium, and ne intention to commit usury;' but a fair contract of purchase and sale upon terms believed by both parties to be just and legal. Such securities are-often sought for as safe, judicious and permanent investments, under the sanction of the courts. In this way the resources and means of the corporate authorities are increased, the burdens of excessive taxation avoided, and the health, the comfort and .prosperity of the inhabitants of towns and cities promoted and extended by the establishment of useful institutions, valuable works of public improvement and the blessings of good government. These considerations are sufficient to show that the defense of usury by corporate bodies is not in accordance with the dictates of justice or an enlightened public policy. The legislature might, therefore, well provide that no-such defense should be interposed in any action against them. The constitutional power being conceded, there is no valid reason why the prohibition should not extend alike to antecedent and subsequent contracts. But if I am mistaken in this view, it is-very clear that the injustice or impolicy of a law is. not a matter for judicial consideration. In no case can the sanctity, the honesty and'the wisdom of the legislature become questions of judicial cognizance. We must take the law as we find it. We must treat it as having been deliberately considered by tbe legislature; all its provisions, as it respects their constitutionality and expediency, thoroughly examined and understood, and finally receiving the enlightened approval of the executive. Thus regarding it, we can *27 arrest the execution of the law only upon a clear conviction that the legislature has transcended its constitutional limits in the enactment. Entertaining no such conviction in this case, we are constrained to affirm the judgment of the Circuit court.
The other judges concurred in the opinion of Staples, J.
Judgment arrirmed.