Burks, J.,
delivered the opinion of the court.
The first assignment of error by the counsel for the appellants presents the main question for decision in this ease, and that is, whether in the payment of the debts of the decedent, William B. Price, out of the assets in the hands of his personal representative, priority is accorded by law to the debt owing by said decedent as trustee for the children of E. B. Hicks, the assets being insufficient to discharge all of the debts,
Price died in June, 1865, and the statute then in force provided that where the assets of the decedent in the hands of his personal representative, after the payment of funeral expenses and charges of administration, were not sufficient for the satisfaction of all demands against him they should be applied:
Eirst. To debts due to the Hnited States.
Secondly. Taxes and levies assessed upon the decedent previous to his death.
Thirdly. Debts due as personal representative, guardian, or committee, where the qualification was in this state, in which debts shall be included a debt for money received by a husband acting as such fiduciary in right of his wife.
Eourthly. All other demands ratably, except those in the next class.
*117 Fifthly. "Voluntary obligations. Code of 1860, ch. 181, § 25.
This section of the Code was amended and re-enacted July 11, 1870; Acts 1869-70, p. 428; Code of 1873, ch. 126, § 25. The only alteration made in the phraseology by the amendment was the insertion of the words “ trustee for persons under disabilities ” iri the clause describing the debts of the third class.
The argument was advanced by the learned counsel for the appellants in the petition for appeal, and repeated at the bar, that it was a matter of grave doubt whether a debt due by the decedent, “ as trustee for persons under disabilities,” was not within the equity of the statute as it stood before it was amended, and it was suggested that the phraseology was changed by the legislature merely to make more certain the benign purpose of the law in favor of those already entitled to its benefits. It was argued that the purpose of the legislature in giving priority to the debts of the third class was to favor the helpless and dependent, and this provision of the law being humane and remedial in its nature, should be liberally construed, and that "William B. Price, although technically styled “ trustee,” was, except in name, actually guardian of the property devised for the support, maintenance, and education of the minor children of E. B. Hicks.
This argument of the learned counsel is plausible, but to us not convincing: In the construction of statutes the primary object is to discover the intention of the legislature, and where that intention can be indubitably ascertained, the courts are bound to give it effect, whatever they may think of its wisdom or policy. Where the language is free from ambiguity, and the intention plainly manifested by it, there is no room for construction. The general rule is, that a leg *118 islative act should be read according to the ordinary an^ grammatical sense of the words, but if terms of are used, which have a fixed technical- signification, they should be generally construed according to the known meaning. Broom’s Leg. Max. 576 (side p.) Words of known legal import are to be considered as having been used in their technical sense, or according ^eir strict acceptation, unless there appear a manifest intention of using them in their popular sense. Potter's Dwarr. 199.
It was observed by Lord Tenterden that “ there is always danger in giving effect to what is called the equity of a statute; it is much safer and better to rely on and abide by the plain words, although the legislature might have provided for other cases, had their attention been directed to them.” 6 B. & C. 475.
The terms employed in the statute descriptive of the preferred debts of the third class are legal terms of definite import, and well understood. The words “ personal representative ” are specially defined by the Code (Code of 1873, ch. 16, § 9), and “ guardian ” and “ committee ” are words of a restricted technical signification. Of the great multitude of obligations and liabilities arising from trusts, public and private, expressed and implied, the legislature deemed three classes only worthy of priority in the payment of a decedent’s debts, where there was a deficiency of assets, and these three classes are specifically enumerated and accurately' described in Avell-known legal language, carefully selected, it would seem, to prevent any misconception of the meaning. Persons answering the description.“personal representative,” “guardian,” “ committee,” are certainly trustees in a general sense, but these legal terms do not import a technical trust, such as Avas conferred on William B. Price by the will of E. B. Hicks. Such Avas no doubt the *119 legislative understanding of the statute implied by the amendment of 1870; for there is nothing in the amendatory act from which it can be inferred that it was intended as merely declaratory or explanatory of the meaning of the statute which it purports to amend, and the just construction is, that the object was to extend the law so as to embrace other debts theretofore excluded.
But it is earnestly contended by the learned counsel for the appellants, that if the priority claimed is not accorded by the statute in force at the death of Price, it was given by the act of 1870. To maintain this view two propositions must be established: First, that the act is retrospective in its nature and operation ; and, second, that the rights of the creditors of the decedent to payment of their debts in the order fixed by the law in force at his death were not so vested as to be beyond legislative interference; for it was conceded in the argument that if these rights had become vested under the law by the death of the .decedent, they could not be divested by the subsequent enactment.
The first proposition raises a question of construction merely. There is no doubt the legislature has the power to enact retrospective laws, provided those laws are not in conflict with the federal or state constitutions, are not ex post facto in their nature or operation, do not impair the obligation of contracts, nor' disturb vested rights, which do not come within the proper limits of the law-making power, nor otherwise contravene the fundamental law. Town of Danville v. Pace, 25 Gratt. 1, 19. While this power is conceded, however, its exercise is universally admitted to be liable to great abuse, and some of the states deny the power to their legislatures by express constitutional amendments.
*120 Legislation generally looks to the future, and hence in seeking the legislative intent in the statute law, it is laid down by an eminent jurist as a sound rule of construction, deduced from the great mass of authorities, “ that 'a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively.” Cooley Con. Lim. 370 (side p.) and cases cited in note.
It was said by Chancellor Walworth to be “ a general rule in the construction of statutes that they are not to have a retroactive effect, so as to impair previously acquired rights. And courts of justice will apply new statutes to future cases which may arise, unless there is something in the nature of the new provisions adopted by the legislature, or in the language of such new statutes, which shows that they were intended to have a introspective operation.” Authorities to the same effect might be indefinitely multiplied. See Potter’s Dwarr. 162-166; Sedgwick on Stat. & Con. Law, 161-172.
In the same spirit is the canon of construction adopted by the legislature of this state. Code of 1873, ch. 15, § 13.
According to the requirements of this statutory rule, “ no new law shall be construed to repeal a former law * * * as to any -right accrued, or claim arising under the former law, or in any way whatever to affect * * * any right accrued, or claim arising before the new law takes effectand this rule of construction is to be observed, “ unless such construction would be inconsistent with the manifest intent of the legisla^ ture.”
Py the terms “ right accrued or claim arising,” could hardly have been intended rights and interests so vested as to be beyond legislative interference, for *121 as to these no saving was necessary; but such rights and claims must have been intended as might be affected by ordinary legislation. If, therefore, as contended, the rights of creditors of a decedent to payment of their debts in the order prescribed by the statute are not vested rights, they are, we think, within the rule of construction provided by the Code.
Several eases have been decided by this court, to which it was held this statutory provision did not apply; but on examination they will be found to be cases involving questions of remedy merely. McGruder v. Lyons, 7 Gratt. 233, 374; Yarborough & wife v. Deshazo, Id. 374; Crawford v. Hulsted & Putnam, 20 Gratt. 211, 225, 226; Town of Danville v. Pace, 25 Gratt. 1. The ease under consideration is one not of remedy, but of right.
Under the rules stated and the well settled principles already enunciated, it seems plain to us that the act of 1870 was designed by the legislature to be wholly prospective—to be applied only to cases of administration of the estates of persons dying after the passage of the act. There is nothing in the nature of the act, or in its terms, showing a different intent in its enactment, and the presumption, as we have seen, is against such intent.
Ho inference of an intended retroactive operation is to be drawn from the mode of amendment; that is, by re-enacting the existing statute as amended “ so as to read,” &c. This mode of amendment was adopted pursuant to the requirement of the constitution of the state. Art. 5, § 15.
A like mode of amending the Code of Procedure and lie vised Statutes seems to prevail in New York; and it was held by the court of appeals of that state, *122 Denio, C. J., delivering the opinion, that where particular sections are amended and re-enacted the portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been law all along; and the new parts, or the changed portions, are not to be taken to have been the law at any time prior to the passage of the amended act. Ely and others v. Holton, 15 New York R. 595, 598.
If the decision in the case of Mechanics and Farmers Bank of Albany, 31 Conn. R. 63, so much relied on by the counsel for the appellants in support of the second proposition, hereinbefore stated, but cited also as a precedent for the construction contended for in this case, could be regarded as in conflict with the well-settled rule to which we have referred, it would not control our decision, for it is not an authority binding on this court. But, on examination, we do not discover any such conflict.
It is not necessary to encumber this opinion with the details of that case. It is sufficient to remark that it arose under the insolvent laws of Connecticut, and one of the questions was, whether an act amending the former law was confined in its operation to estates of insolvents which should be in settlement after the passage of ,the act. The language of the act was “ estates in settlement,” and it was held that these words were broad enough to include estates in settlement at the date of the act as well as future ones.
Whether the construction given by the court was the proper one or not, it seems to have been based chiefly on the terms of the statute as indicating an intention of the legislature that it should operate in existing as well as in future cases.
*123 The construction contended for in this case by the counsel for the appellants, if adopted, would bring about, generally, much embarrassment and confusion in the administration of decedents’ estates, and, in many cases, be productive of great mischief, hardship, and injustice.
Take the case in judgment as one of the many illustrations that might be given. The estate of William B. Price at his death was worth about $10,000. His debts amounted to upwards of $50,000. Among these were debts owing to Mary E. Price and others for whom he had been guardian, which were preferred under the statute as it then stood; and the estate was sufficient to discharge them and leave a balance of about $5,000, as of the date of the decree appealed from, to be apportioned among the general creditors of the fourth class, whose debts at the same date, with accumulated interest, amounted to upwards of $73,000. Among these general creditors is included the debt due by the decedent as trustee for the children of E. B. Hicks. If this last-named debt is entitled to priority, as claimed, the other preferred debts will be paid in part only, and the general creditors will get nothing.
But suppose, after Price’s death, the executor had collected all the assets and converted them into money, and having ascertained the names of all the creditors and the amounts due to them respectively, he had commenced to pay over to each his ratable share of the money in his hands as executor, and they being numerous, dispersed, and some of them perhaps not accessible, he had paid only one-half of them the shares due them and he had retained in his hands the residue of the money for the other half, intending to pay as soon as he could communicate with them, and .before this was done, or could be done, the act of 1870 *124 had been passed. So far as payments had been made, as admitted in the argument, they could not be disturbed, because the money paid would become at once the absolute property of those to whom it was paid; and the consequence would be, that, giving effect to-the act as contended for, one half of the general creditors of the fourth class would receive their full share of the assets, a single creditor would receive all that was left or share it with other preferred creditors, and the remaining creditors of the fourth class would receive nothing. Such gross inequality and injustice, easily foreseen, could not have been contemplated by the legislature in the enactment which it passed.
This conclusion renders it unnecessary to decide the question mostly argued in this case and with signal ability, whether the rights of creditors of a decedent to payment of their debts out of his estate according to the order prescribed by the law in force at the death of such decedent are so far vested as to be beyond -legislative interference. The difficulties inherent in the subject of what is denominated vested rights, it is truly said, have led to frequent contradiction; and there is perhaps no subject, it is further said, of equal importance, on which there are greater incongruities than on the point, what rights are vested so as to be beyond legislative action, and what are within its proper and regular control. Sedgwick on Stat. & Con. Law, 650.
It is a sufficient answer to the second assignment of error by appellants’ counsel, based on the action of the court overruling tha first exception of Price’s executor to Commissioner. Turnbull’s report, to say that we find no evidence in the record to sustain it.
It is also objected that the allowance of - thirty dollars to Commissioner Turnbull for making out state *125 ment “X,” on which, the decree appealed from was based, is excessive. It would seem to require some care and skill to make the statement, including the apportionment among the numerous creditors. The circuit judge, who was cognizant of all the facts, must have thought the allowance reasonable. We have no means of determining whether it was reasonable or not. At all events, the amount is too small to be a matter of much consequence to the parties.
The court is of opinion, for the reasons stated, that there is no error in the decree appealed from, and that it should be affirmed.
Decree arrirmed.