Christian, J.,
delivered the opinion of the court.
This case presents a single question, and must be determined by the true construction to be given to our statutes on the subject of usury.
*630 The facts disclosed by the record, so far as it is necessary to refer to them, are as follows :
The St. Louis Mutual Life Insurance Company is a foreign corporation, having its chief office in the city of St. Louis, Missouri. Its principal business was that of life insurance. In connection with this insurance business it also had authority under its charter to loan money, and its agents were authorized to make loans of money to those who might take out policies of life insurance in said company. The loans were to be negotiated upon certain conditions and stipulations prescribed by the rules of the company to its agents, among which conditions it was stipulated that the loanee should take out policies of insurance from said company at its usual rates of insurance, pay the premiums on such policies promptly, pay interest on the proposed loan after the rate of ten per centum, per annum semi-annually, and secure the payment of the loan by deed of trust or mortgage on unincumbered real estate double the value of the amount of the loan, and execute bonds for the loan to run one year, but renewable upon prompt payment in advance of interest for the next ensuing 3Tear, so that such loans should not continue for a period exceeding five years. ■
John A. Otey was the local agent for the company in the county of Bedford to solicit insurances, negotiate loans and forward applications. From this agent the appellant borrowed the sum of $2,500, to bear interest at the rate of ten per centum per annum. At the same time he took out two policies of insurance (which it seems. was one of the conditions of the loan of that amount): one. on his own life for the sum of $10,000, and the other on the life of his wife for the sum of $5,000. Upon the former he was to pay a premium of $318.80, and on the latter a premium of $132.45. The interest upon this loan was to be paid semi-annually in *631 advance. The'premiums and the first half-years interest were to be deducted by the company from the amount of the loan. By the terms of the agreement between the parties, the premiums on the two life-policies and the first half-year’s interest being deducted from the sum loaned ($2,500), left a balance of $1,923.25. A draft for this amount and the two policies of insurance were forwarded to Otey, the agent, at Liberty, to be delivered to Mosby whenever he should execute a deed of trust upon his farm of six hundred acres free from other incumbrance. Upon this farm there was a pre-existing deed of trust to secure one McGhee for the sum of $2,000, which amounted at the time of the above transaction to about $2,200. It seems the object of the loan secured by Mosby was to lift this lien in favor of McGhee, who was pressing for the payment of his debt and threatening to sell the land under his trust deed. The amount borrowed from the company, after deducting premiums, &c., was not sufficient by some $200 to pay off McGhee’s lien, and he was unwilling to release his lien until this balance was paid. This caused some delay in the consummation of the negotiations between Mosby and Otey, the agent of the company, and it was not until the 31st August, 1872, that a release deed was executed by McGhee; and on that day the net amount of the loan was paid over to McGhee and the policies delivered to Mosby.
Two bonds were executed by Mosby to the company: one for $2,500, the principal amount agreed to, which was payable twelve months after date, and the other for $125, half-year’s interest, payable six months after date. Both of these bonds were secured in the deed of trust, and there was a stipulation in said deed that upon default in the payment of either, the land should be sold- upon certain terms set out therein. Mosby failed to pay at maturity the bond for $125, which be *632 came clue on the 14th December, 1872, and on the 28th March, 1873, the trustee advertised a sale of the to be made on the 28th April, 1873, for cash sufficient to pay the whole of the two bonds, t-o-wit: $2,625, with ten per cent, interest on $125 from 14th December, 1872, and for the residue of the purchase-money on such credit as the grantor, Mosby, might designate. The terms of sale thus advertised were in strict conformity with the provisions of the trust deed.
On the 19th April, 1873, Mosby filed his bill of injunction, in which he charged that the contract made with him by the St. Louis Insurance Company was usurious, and prayed “ that an issue be directed to be tried by a jury, to try and determine whether or no the transaction aforesaid be usurious, and if found usurious, that the said debts and obligations be declared void; and that defendants be restrained and enjoined from selling said tract of land, or any part thereof, by virtue of said deed of trust,” &e. The defendants, the St. Louis Insurance Company, and their agent, Otey, answered the bill of injunction, in which they deny the allegation of usury, and set out, with much detail, the whole transaction—not necessary to be further referred to, as the material facts are briefly set out in the foregoing statement.
The cause came on to be heard in the circuit court of Bedford on the bill and answers, and replications thereto, when it was ordered that the following issue be tried on the common law side of the court, viz: “ "Whether or no the contract in the bill mentioned for the loan of the sum of $2,500 to the complainant by the defendant, the St. Louis Mutual Life Insurance Company, is usurious.” Upon the trial of this issue the jury returned the following verdict: “We, the jury, find that the contract for the loan of the sum of *633 $2,500 in the hill mentioned to the complainant, the St. Louis Mutual Life Insurance Company, was usurious.”
A motion was submitted by the defendant (the insurance company) to set aside the verdict and grant a new trial, which motion was overruled, and it was ordered to be certified to the chancery side of the court, that the court was satisfied with and approved the said verdict. And thereupon it was decreed and ordered by the said circuit court on the chancery side thereof, that unless the plaintiff, Thomas Y. Mosby, do pay to the St. Louis Mutual Life Insurance Company the sum of $1,923.25 within sixty days from the date of said decree, with six^er cent, interest thereon, then that certain commissioners therein named should sell at public auction the tract of land in the hill and proceedings mentioned, for so much cash as shall be sufficient to pay the expenses of said sale, and for the residue, on a credit of one, two and three years, in equal instalments, hearing six per cent, interest from the day of sale.
From this decree the complainant, Mosby, applied for and obtained an appeal and writ of supersedeas from one of the judges of this court.
The court is of opinion that there is no error in the said decree to the prejudice of the appellant. Admitting that the transaction was usurious, as was found by the verdict of the jury and approved by the judgment of the court, the question is, what is the penalty or forfeiture incurred by the appellee ? Is it the forfeiture of the whole amount, principal and interest, or is it the forfeiture of the interest only ? It is true at the date of the contract (June 14th, 1872,) the statute, as it then stood, declared that “ all contracts and assurances made, directly or indirectly, for the *634 loan or forbearance' of- money or other thing at a greater rate of interest than is allowed by law, shall be void.” But at the time the decree was rendered this statute was so amended as to declare that such contracts “ shall be deemed to be for an illegal consideration as to the excess beyond the principal amount so loaned or forborne.” Is the case to be governed by the statute existing at the date of the contract, or by that which was in force at the date of the decree ? It is insisted by the learned counsel for the appellant that the last named statute is prospective, and not retroactive, and that it applies only to contracts made after its enactment.
It is a sufficient answer to this position to refer to the provisions of our Code upon the construction of statutes, which declares that “if any penalty, forfeiture or punishment be mitigated by any provision of the new law, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new law takes effect.” Now, the penalty or forfeiture under the old law was a forfeiture of the whole debt. This was certainly “mitigated” by the new law, which declares that there shall be a forfeiture of the interest only. It canpot be said that this has reference only to criminal cases, because the language used is general enough to embrace both civil and criminal cases. If it had been the intention of the legislature to confine the provision to criminal cases alone, it would not have used the words “ the party affected ” thereby, but the word “ accused,” or some similar word indicating a criminal offence. Indeed, it has been held by this court that these precise words used in another statute (Code 1860, ch. 216, § 2) apply to proceedings whether criminal or civil. See Jeter Phillips’ case, 19 Gratt. 485, 526. Certainly the language of the statute and the mischief to be remedied are equally predicable of civil as well as criminal proceed *635 ings and judgments. It is further insisted, however, by the learned counsel for the appellant, that the relief to which he was entitled under the plea of usury' under the law as it stood at the date <Jf the contract was a release of the payment of the whole debt; or, in other words, that it was his right to compel a forfeiture by the' appellee of the whole sum which he had borrowed from him, and that this right was a vested right which could not be taken from him by any law enacted after the date of his contract. It may here be remarked that while the statute fixing the penalty for usury as a forfeiture of the whole debt had not been amended at the date of the contract, yet the statute of construction above referred to was then in existence, and enters into the contract in the same degree as the first named statute. Upon this question, however, it is sufficient to refer to the able and elaborate opinion of Judge Staples in the case of the Town of Danville v. Pace, 25 Gratt. 1, and the cases there cited; and also the leading case of Curtis v. Leavitt, 15 New York Reports, quoted approvingly by Judge Staples. Mr. Justice Paige said in that ease, page 229': “ The defence of usury is in the nature of a penalty or forfeiture, and may at any time bo taken away by the legislature in respect to previous as well as subsequent contracts, without trenching upon any vested right. A proposition that a party can have a vested right in enforcing a penalty or forfeiture, against which it is the office of a court of equity to relieve, is a legal solecism. Statutes of usury are highly penal in their character, and the defence of usury has always been regarded as an unconscientious defence, and has never received the favor either of courts of law or equity. Ho penalty can be enforced after the repeal of the law imposing it, unless saved by express words in the repealing act. * * * The repealing statute obliterates the statute repealed as completely as if it had not been passed, and it must be considered as *636 a law that never existed, except for the purpose of those actions which were commenced, prosecuted and concluded while it was an existing law.” In the same case Judge Selden said: “Usury being a mere statutory defence, not founded upon any common law right, either legal or equitable, it was clearly within the power of the legislature to take it away.”
Applying these principles to the case before us, we are of opinion that there is no error in the decree of the circuit court and that the same be affirmed.
Decree affirmed.