ESTHER CUNNINGHAM, d. b. a. *vs.* JOHN DIXON, p. b. r.

New Castle County, November Term, 1893.

**Judgment.**—A defect in the record of a judgment rendered by a Justice of the Peace in New Castle County, between April 8, 1881, and April 20, 1887, in not setting forth the residence of the parties, is cured by Chap.  32, Vol.  18, Laws of Delaware, which specifically makes such judgments valid.

**Jurisdiction.  Justice of the Peace.**—Jurisdiction of a Justice of the Peace is given by statute, and is absolutely independent of docket entries ; it is a substantive fact, and docket entries are only evidence of that fact.

**Same.**—A judgment by a Justice of the Peace will be reversed upon *certiorari* when the evidence of jurisdiction is not spread upon the record.

**Constitutional Law.**—The act of April 20, 1887, providing that no judgment rendered by a Justice of the Peace shall be reversed because it fails to show upon the record the residence of the parties does not impair the validity of any contract, but simply describes the evidence which is to govern the Appellate Court when called upon to review a judgment.  *Quere.*—Is the act of April 8, 1881, constitutional ?

**Joint Debtors.  Judgment.**—Where all joint debtors are joined in an action judg-

ment may be rendered against such of them as may be served with process and are in court.

This was a *certiorari* to the judgment of a Justice of the Peace. The facts of the case and the exceptions will appear from the opinion.

*Nields,* for defendant below appellant.

*Ward,* for plaintiff below respondent.

LORE, C. J., delivered the opinion of the Court.

The first and second exceptions are, that the judgment was rendered by the justice against one of two defendants, jointly sued, upon a joint cause of action.

The record shows that Esther Cunningham, the defendant, and William Cunningham, were both joined in the action, but service was had only upon Esther, and judgment was rendered against her.

It is settled in this state that where all the joint debtors are joined in the action, judgment may be rendered against such of them as may be served with process and are in court; *Jackson vs. Hedges,* 4 Harring. 96; *Reybold vs. Parker,* 6 Houst. 544. In the latter case the opinion of Houston, J., reviews the law and practice on the subject. These exceptions must therefore fail.

The third and fourth exceptions set forth that the record does not show that the plaintiff was a *bona fide* resident of the hundred where the Justice of the Peace resided, nor that the defendants, or either of them, resided in the same hundred with the Justice or in the adjoining hundred.

The act of Assembly of April 8, 1881, Chap. 340, Vol. 16, Laws of Delaware, provides as follows:

SEC. 2. "That from and after the passage of this act the jurisdiction of the several Justices of the Peace now appointed or hereafter to be appointed in and for New Castle County, shall extend only to the hundred for which they were appointed and in which they reside, and to the adjoining hundreds, and no action shall be brought or maintained before any Justice of the Peace appointed for or residing in any

hundred in New Castle County, against any person who does not reside within the same hundred of the said Justice of the Peace, or within a hundred immediately adjoining."

SEC. 3, provides that every "judgment rendered by a Justice of the Peace in New Castle County in civil causes, contrary to this act shall be void," and subjects the constable who shall serve any process in any such case, to a fine of one hundred dollars.

SEC. 4 makes any Justice of the Peace who shall wilfully and knowingly issue any process, in any such case, guilty of a misdemeanor, and liable on conviction, to a fine of from fifty to one hundred dollars. Such conviction shall also " work a forfeiture of his office."

Under this law, this Court has uniformly reversed the judgments of Justices of the Peace, in *certiorari* cases, where the record did not set out the residence of the parties, and carry upon its face the evidence of jurisdiction. Not, we apprehend, because the judgment was invalid for want of jurisdiction, but because the facts showing jurisdiction were not exhibited or set forth on the record.

By the act of April 20th, 1887, Chap. 32, Vol. 18, Laws of Delaware, the Legislature amended the act of April, 1881, and expressly provided " That no judgment in a civil suit rendered before the Justice of the Peace in and for New Castle County after the passage of the said act and prior to the passage of this amended act shall hereafter be reversed or invalidated on account of one record of such judgment failing to exhibit the residence of the parties thereof."

The latter act is inartificially drawn, but is not ambiguous or uncertain, and expressly says that no judgment rendered between April 8, 1881, and April 20, 1887, " shall hereafter be reversed or invalidated for failure to exhibit the residence of the parties thereof."

In the case at bar judgment was rendered October 31, 1885. The *certiorari* issued July 6, 1886; the exceptions were filed November 25, 1886. The judgment was therefore rendered between April 8, 1881, and April 20, 1887, and the *certiorari* was pending when the act of April 20, 1887, was passed.

The case is therefore clearly within the terms of the amend-

ment of 1887. The Court is at a loss to see what right it has to disobey the express mandate of this law and nullify its provisions. The argument of counsel on this point was very meagre, and the Court is left to determine the law without assistance from that source. It will not be questioned, we think, that the Legislature has the right to say what docket entries shall be necessary on the records of a Justice of the Peace in any action. If so, it necessarily follows that it has the power to say what shall be the effect of making or the failure to make such entries. This is all that the act of 1887 does. It is not a question of jurisdiction, but of the evidence of the jurisdiction shown upon the docket of the Justice.

Jurisdiction is absolutely independent of docket entries. It is given by the statute of the State. No docket entries can give jurisdiction or take away jurisdiction from a Justice of the Peace. Jurisdiction is a substantive fact, and docket entries are only evidence of that fact. Where courts are confined to the records itself, as in *certioraries*, and the evidence of jurisdiction is not spread upon the record the judgment will be reversed, not for want of jurisdiction, but for the want of the evidence of such jurisdiction. Where the Court, however, permits itself to go outside of the record, and finds as a fact that the court below had jurisdiction, even though it was not set forth on the record, it would not reverse such judgment. Should it so reverse, it would result in the absurdity of reversing a judgment for want of jurisdiction in the Court below, when the evidence showed that jurisdiction actually existed.

It must therefore be apparent that the question we are called to pass upon does not touch jurisdiction or upon the validity of any contract, but is simply as to a matter of evidence, which is to govern the Appellate Court when called upon to review the judgment of the court below.

The fact that this was *lis pendens* at the time of the passage of the act of April 20, 1887, does not alter the case. Cooley on Constitutional Limitation, 381, says: "The bringing of a suit vests in a party no right to a particular decision, nor does the pen-

dency of an appeal or of a writ of error, for his case must be de-
termined on the law as it stands, not when the suit was brought or
the appeal taken, but when the decree or judgment in the pending
suit is rendered."

This doctrine is, in our judgment the same as that broadly  ·
laid down in *Cook vs. Gray*, 2 Houst. 455, and affirmed by the
Court of Errors and Appeals in *Gray vs. Cook*, 3 Houst. 49.
This was one of the most interesting cases ever tried in this State.
It was thoroughly argued by able counsel, both in the court below
and above, and was passed upon by as able Judges as ever sat in
our courts. It is quite in line with all the authorities we have
consulted and is based on established principle. Indeed we have
found no well considered case to the contrary.

It might be said in passing, that this view of the law works
no hardship in the case at bar. If the Justice had jurisdiction in
fact, although it may not be disclosed on the face of the record; it
is just that the judgment should stand and be enforced. If on
the other hand, he had not jurisdiction in fact, then by the terms
of the act of April 8, 1881, and which are not disturbed by the
amendment of 1887 the judgment is void. Its enforcement may
be restrained. The constable who served the writ is subject to a
fine of one hundred dollars. The Justice who issued the writ to a
fine of not exceeding a hundred dollars, the crime of misdemeanor
and forfeiture of his office in case of conviction. The defendant
therefore has ample and drastic remedies.

We think, therefore, this judgment should be affirmed. No
sound reasons have been given to us, and we have been unable to
find any which would justify the Court in disregarding the express
language of the act of April 20, 1887, which says: "The judg-
ment shall not be reversed or invalidated."

No opinion is expressed as to the constitutionality of the act
of April 8, 1881, limiting the jurisdiction of Justices of the Peace
for this county. The question was not raised and is not therefore

before us, the practice of the Court in *certiorari* cases being to consider and pass only on the questions raised by the exceptions.

*Let the judgment be affirmed.* .

CULLEN, J. (dissenting).   The suit upon which judgment in this case was recovered was commenced before a Justice of the Peace in New Castle County, and judgment was rendered on the 31st of October, 1885.   The writ of error was sued out on the 6th day of July, 1886.   On the 8th of April, 1881, an act was passed providing that no action should be brought by a Justice of the Peace against a party, save in the hundred in which said Justice resided or the adjoining hundred.   The record sent up does not disclose or aver the fact that the said Esther Cunningham was a resident within the hundred of the said Justice or the adjoining hundred, and for this omission the exceptions filed aver that there was error in the judgment, since it does not appear from said record that suit was brought for a cause of action within the jurisdiction of said Justice.

This act applied only to New Castle County, and was passed April 8, 1881.

This Court has repeatedly since the passage of the last named act reversed and set aside judgments rendered by a Justice of the Peace where the record was similar to this, and upon the same exceptions filed in this case, on the ground that it did not appear from the record that the cause of action was within the jurisdiction of the Justice of the Peace.

After the writ of error was sued out in this case, and while the same was pending a decision in this court, there was passed on the 20th day of April, 1887, an act of Assembly as follows:

"SECTION I. That the said act, entitled 'An act to reduce the number of Justices of the Peace in the city of Wilmington and for other purposes,' be and the same is hereby amended as follows:   That no judgment in a civil suit rendered by or before the Justice of the Peace in and for New Castle County, after the passage of said act and prior to the passage of this amended act, shall hereafter be reversed or invalidated on account of one (?) record of such judgment failing to exhibit the residence of the parties thereof.   But all judgments otherwise rendered in viola-

tion of said act, whether remaining on the docket of the Justice of the Peace or transferred to the Superior Court docket of New Castle County, are hereby declared to be void."

Before considering the construction of the last named statute it will be well to consider the legal rights of the parties at the time of the rendition of said judgment. It can not be denied that said judgment was erroneous, and would have been vacated and set aside had these exceptions been passed upon and decided prior to the passage of the act of 1887. The defendant had then a legal right to apply for the reversal of said judgment. What, then, has since occurred to take away the legal vested right that existed in her to use the means of defense which the law had given? The right then at the time the writ of error was sued out by Esther Cunningham to set aside said judgment cannot be questioned, and if the same, being then a vested right, has ceased to exist, it must be by and through the force and virtue of the said act of 1887, which is the contention of the counsel for the defendant in this *certiorari*, while it is contended by and on the part of the counsel for the plaintiff that the said act of 1887 can in no way alter, change or affect the right which he contends is a vested right of the said Esther Cunningham, and that this case should be decided as if the act of 1887 had never been passed.

The decision of the question arising in this case involves the construction of said act of April 20, 1887; as to its intent and meaning, whether it was remedial to the act passed April 8th, 1881, or whether it impairs the rights of parties vested or inchoate, whether the said act in its terms and meaning has not sought to take cognizance of a judicial question, and whether the act of 1887 is in accordance with the provisions of the Constitution.

This act was evidently intended to be retrospective or retroactive in its words and meaning, and seeks to amend the errors made by Justices of the Peace in suits which have been consummated to judgment under the act of 1881. This act of 1887 is very inartistically drawn, and reflects no credit on the ignorant draftsman, who has stultified, by their own records, the Justices of the Peace

rendering such judgments. It must be construed as it is and as we find it. In the construction of statutes it is well settled that the same should not be construed against the plain and obvious dictates of reason, and the law upon this subject is ably laid down by Kent, J., in the case of *Dash vs. Vancleak*, 7 Johns. 471, in which case this is fully and clearly settled and determined : " A statute is never to be construed against the plain and obvious dictates of reason." "The common law," says Lord Coke (8 Co. 118-a) " adjudgeth a statute so far void;" and upon this principle the Court of South Carolina proceeded when it held (1 Bay, 93,) that the courts were bound to give such a construction to a statute as was consistent with justice, though contrary to the letter of it ; the very essence of a new law is a rule for future laws. The construction here contended for on the part of the defendant, would make the statute operate unjustly. It would make it defeat a suit already commenced, upon a right already vested. This would be punishing an innocent party with costs, as well as divesting him of a right previously acquired under the existing law. Nothing could be more alarming than such a subversion of principle. In the case of *Beardleston vs. Sprague*, 6 Johns. 101, the Court unhesitatingly acknowledged the principle that a statute is not to be construed so as to work a destruction of a right previously attached. In the case of *Osborne vs. Heyer*, 1 Bay 171, decided in South Carolina in 1791, the question arose upon a statute relative to the duty of sheriffs as to civil process. The Court rejected the construction of a retroactive operation of the statute, according to its literal meaning, and in particular said that a law should not be so construed as to divest a right, and that a retrospective law in that sense would be against the Constitution of the State. The Judges of the Supreme Court of the United States in the case of *Calder vs. Bull*, 3 Dall. 386, speak in strong terms of disapprobation of all such laws; and in *Ogden vs. Blackledge*, 2 Cra. 272, they considered the point too plain for argument—that a statute could not retrospect so as take away a vested civil right. Justice Kent is the case cited *supra* says : " It is equally inad-

missible to consider the act as declaring how the former statutes were to be construed as to cases already existing. If this interpretation was to be considered as giving the former acts a new meaning, it then becomes a new rule and is to have the same effect as any other newly created statute; but if it be considered as an exposition of the former act for the information and government of the courts in the decision of causes before them, it would be taking cognizance of a judicial question. This could not possibly have been the meaning of the act, for the power that makes is not the power to construe a law."

I have said that no act of the Legislature could impair or destroy vested rights; and in the construction of this act it becomes necessary from the facts presented, to decide whether there was existing in the said Esther Cunningham any right, vested or inchoate, at the time said act of 1887 was passed. What in law are vested rights, such as by the Constitution cannot be divested by any act of the Legislature? In Sutherland on Statutes, § 480, the law as to what constitutes vested rights is clearly laid down as follows:

" Vested rights cannot be destroyed, divested or impaired by direct legislation. Their protection is one of the primary purposes of government. They are secured by the bill of rights, and the constitutional limitations upon the exercise of the sovereign powers. There is a vested right in property which one owns and it cannot be legislated away. A vested right is property as tangible things are when they spring from contract or the principles of the common law. There is a vested right in an accrued cause of action; even in the statute of limitations when the bar has attached, by which an action for a debt is barred. That statute presumes evidence from length of time which cannot now be produced; payment which cannot now be proved. A person in adverse possession is no longer subject to action to disturb him, the one has a vested right to his defense, and the other a title with all its incidents and implications. And it is then secure against legislative interference.

" If a contract when made is a nullity, it cannot be validated by an act of the Legislature, for that would be to impose a binding agreement where none existed. A right of redemption once vested is a property right which can only be taken by due process of law; it cannot be abrogated by a legislative act. A lien or other right once attached cannot be destroyed by repeal of the law under which it was derived. After a tax has been legally remitted it cannot be reimposed. When a right has been perfected by judgment, the fruits of recovery cannot be diverted by new legislation, nor subjected to new hazard by reviving a new right to appeal, or some other mode

of review. An act cannot affect the construction of the will of a testator who died before it was passed, Rights of a husband in the property of the wife when vested cannot be impaired by subsequent legislation. Treaties are the supreme law of the land; rights which have vested under them cannot be destroyed or affected by the action of either the legislative or the executive department of the government, nor by the rules of practice adopted by the officers of the latter department; nor are the courts in determining those rights to be controlled by the action or rules of practice of the other departments. It is not within the power of the Legislature to create a legal liability out of a past transaction, for which none arose by the law as it stood at the time of its occurrence."

The text of this learned author is well supported by numerous authorities of decisions of the various courts of this country which sustain him.

There is no question that a retrospective act may be passed by the Legislature, where the same goes to modify only the remedy, where the said act does not involve vested rights of one kind or another, and is only remedial to a former statute. In *Moore vs. State*, 43 N. J. L. 207, and *Maxwell vs. Goetschins*, 40 Ia. 383, the Court say :

" A statute provided that by particular pleading a borrower might defend against a usurious loan to the extent of the usury. It was regarded as remedial, and though imposing a duty to pay the loan and lawful interest in accordance with the debtor's equitable duty, and made to operate retrospectively in derogation of the statute in force when the loan was made by which the contract was unlawful, it was held not obnoxious to the objection, that it took away a vested right, for it was said there could be no vested right to do wrong."

This same principle is supported by *Town of Danville vs. Pace*, 25 Gratt. 1 ; *Satluen vs. Matthewson*, 16 S. & R. 191, and other authorities.

The questions involved in this case as to the distinction between the right and the remedy sought by a subsequent statute as affecting a former have been most ably argued and defined by Chief Justice Gilpin in the case of *Cook vs. Gray*, 2 Houst. 455, where he expressly holds that the last statute in that case did not in any way involve the right of the defendant, either vested or inchoate, and is in these words : " The case which we are called on to decide is the case of a repealing statute, involving no right of the defend-

ant, either vested or inchoate, but simply affecting a modification of the plaintiff's remedy," and at the conclusion says : "Considering that the repealing act of February 21st, 1859, did not impair the obligation of the contract of bail, nor interfere with any vested or inchoate right of the defendant, we are of opinion that the plaintiff is entitled to recover."

The facts in this case, though involving the same principles as decided in the case of *Cook vs. Gray*, are very different from that case. The act of 1887 attempted to make good and valid certain judgments rendered by Justices of the Peace in this county, several of which had been declared null and void by this Court, and not on mere technical grounds, but for matters of substance, which went to the very root of the action. Parties to suits have rights : the plaintiff to sue one against whom he has a vested right of action, and the defendant to make his defense. Those rights are as inviolable and secure in the law as where the suit arises on a contract. On what ground can be supported the principle or doctrine that the Legislature can by any law make good invalid judgments ? Can any act make good the ignorance of an officer who has assumed jurisdiction when he has none? Wherein does the act of 1887 become a remedial law? Does it in any way remedy defects, or was the cause of justice promoted ? But, on the contrary, is the effect, if carried out, other than to make good judgments rendered invalid by ignorance? Such are the express terms, intent and meaning of the act of 1887, for it expressly declares that it shall apply only to judgments rendered prior to the passage of said act. The judgment in this case was rendered by default of appearance. The defendant certainly has a vested right and a legal right of which she seeks to avail herself, and otherwise a great wrong may be done and the said Esther Cunningham be made subject unjustly to pay costs. If by the act of 1887 it had been declared that all judgments entered by Justices of the Peace since the act of 1881 should, up to 1887, be null and void, could it be contended that this was a remedial act? If so that would destroy all rights of the plaintiffs. I can see no reason why the operation.

of the act of 1887, if applied in this case as a remedial act, is not equally erroneous.

For these reasons I consider that the exceptions in this case should be allowed and judgment reversed, precisely as if the act of 1887 had not been passed. If judgment below be affirmed, a great wrong is done the defendant, an irreparable injury, but if the exceptions be allowed, the plaintiff below may again sue and his rights remain intact.