86    481
e104  792
e104  794
o104  799
j104  800
j104  801
j104  803
104   804

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RICHMOND & DANVILLE R. R. CO. V. PAYNE.

### JANUARY 30th, 1890.

1. COMMON CARRIERS—*Limiting liability.*—By Code 1887, sec. 1296, no agreement *to exempt* a common carrier from liability for injury or loss occasioned by his own neglect or misconduct shall be valid, yet the weight of authority favors the proposition that a carrier may by special agreement, fairly made in consideration of a reduced rate of transportation, *limit* his liability to a certain amount, less than the value of the property, in case of loss or damage occurring through his negligence.

2. PRACTICE AT COMMON LAW—*Bill of particulars.*—If the declaration clearly state the cause of action relied on, there is no error in refusing to order a bill of particulars.

Error to judgment of circuit court of Albemarle county, rendered at its February term, 1889, in an action of trespass on the case, wherein A. D. Payne (the defendant in error) was plaintiff and the Richmond and Danville railroad company (the plaintiff in error) was defendant. Opinion states the case.

*Charles M. Blackford,* for plaintiff in error.

*Thos. S. Martin* and *George Perkins,* for defendant in error.

LEWIS, P., delivered the opinion of the court.

The declaration alleges that on the 26th day of May, 1888, the plaintiff delivered to the defendant company at Charlottesville eight horses, in sound and good condition, and of the

aggregate value of $3,000, to be transported to Philadelphia; that at the same time J. B. Andrews delivered to the defendant eight other horses, to be likewise transported to the same place; that all of the horses were, on the same day, placed by the servants of the defendant in a box car stationed on a side track, and that after the car had been loaded it was suddenly and violently, and without any notice or warning, struck by one of the defendant's locomotives, which was then and there being carelessly and negligently governed, which forced the car a considerable distance on the side track from its original position, causing great damage to the horses and to the plaintiff himself, who was in the car at the time; and the declaration claims damages on account thereof to the amount of $3,000.

Upon the delivery of the horses, and before the collision occurred, a bill of lading was issued by the defendant, signed by its station agent at Charlottesville and by Andrews, for Payne & Andrews, wherein it was recited "that, whereas the Richmond and Danville railroad company and connecting lines transport live stock only at certain tariff rates, except when, in consideration of a reduced rate, the owner and shipper assumes certain risks specified below; now, in consideration of said railroad's agreeing to transport the above described live stock at the reduced rate of $44 00 per car to Philadelphia, and a free passage to the owner or his agent on the train with the stock (if shipped in car-load quantities), the said owner and shipper does hereby assume and release the said railroads from all injury, loss and damage or depreciation which the animal or animals, or either of them, may suffer in consequence of either of them being weak, or escaping, or injuring itself or themselves, or each other; or in consequence of overloading, heat, suffocation, fright, viciousness, and from all other damages incidental to railroad transportation, which shall not have been caused by the fraud or gross negligence of said railroad companies."

And then, among other things, it was further stipulated as follows: "And it is further agreed that, should damage occur for which the companies may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall *not exceed, for a * * * horse,* $100."

There was evidence at the trial tending to prove that the horses injured were worth much more than $100 each, and it is conceded that the damage was caused by the negligence of the defendant's agents. The jury returned a verdict for the plaintiff for $2,485 damages, upon which judgment was entered; whereupon the defendant company obtained a writ of error and *supersedeas.*

The first assignment of error is that the circuit court erred in overruling the defendant's motion that the plaintiff be required to file a bill of particulars. The motion was made under section 3249 of the Code, which enacts that "in any action or motion, the court may order a statement to be filed of the particulars of the claim or of the grounds of defense; and, if a party fail to comply with such order, may, when the case is tried or heard, exclude evidence of any matter not described in the notice, declaration, or other pleading of such party so plainly as to give the adverse party notice of its character."

We think the case is stated in the declaration with sufficient fullness to apprise the defendant of its character, and that there was no error in overruling the motion. The office of a bill of particulars is not to set forth matters of evidence, but to inform the opposite party of the cause of action to be relied on at the trial, and which is not plainly set out in the pleadings. And although it is ordinarily within the discretionary power of the court to order a bill of particulars, yet the power is much less frequently exercised in actions of tort than in actions *ex contractu,* as the general rule in tort is that if a pleading is not sufficiently specific, the remedy is by demurrer. *Garfield* v. *Paris,* 96 U. S., 557; *Higenbotom* v. *Green,* 25 Hun., 214.

The second assignment of error presents a more important question. It relates to the refusal of the circuit court to instruct the jury that in assessing damages against the defendant, the estimate should be made "upon the supposition that each horse in its sound condition was only worth the sum of one hundred dollars." And this raises the question whether or not the stipulation in the bill of lading, above quoted, constitutes a valid contract whereby the liability of the defendant is limited as therein set forth.

This precise question has not been hitherto adjudicated by this court; but applying to it the test of certain principles which we consider well established, its solution is free from difficulty.

There is no doubt that a common carrier cannot lawfully stipulate for *exemption* from liability for the consequences of his own negligence or that of his servants. This was decided in an elaborate opinion by the supreme court of the United States in *Railroad Co.* v. *Lockwood*, 17 Wall., 357, and by this court in *Railroad Co.* v. *Sayers*, 26 Gratt., 328; and the principle is now brought into the Code, sec. 1296 of which declares that "no agreement made by a common carrier for exemption from liability for injury or loss occasioned by his own neglect or misconduct shall be valid."

But that is not the question before us. The question here is whether, when the shipper signs a bill of lading, not exempting the carrier from liability for the negligence of himself or his servants, but *limiting* the amount in which the carrier shall be liable, in consideration of the goods being carried at reduced rates, such a contract, fairly entered into, is valid and binding; and we see no reason why, when its terms are just and reasonable, it should not be. The test to be applied in all such cases is, was the contract fairly entered into, and are its terms just and reasonable ?

At common law, it is true, the carrier is chargeable as an insurer, unless loss or damage occur by the act of God or the

public enemy.    But as the law now is, he may, by special con-
tract, restrict his liability for losses otherwise occurring.  Indeed,
he may by such agreement exempt himself absolutely from any
liability for damage not caused by the negligence or default of
himself or his servants.    And the owner and shipper, by enter-
ing into the contract, "virtually agrees that, in respect to the
particular transaction, the carrier is not to be regarded as in
the exercise of his public employment, but as a private person,
who incurs no responsibility beyond that of an ordinary bailee
for hire, and answerable only for misconduct or negligence."
*New Jersey Steam Nav. Co.* v. *Merchant's Bank*, 6 How., 344;  2
Pars. Cont. (6th ed.), 233, and cases cited.

This, indeed, is said, in some of the cases, to be no departure
from the ancient principles of the common law.    In *Nicholson*
v. *Willan*, 5 East, 507, Lord Ellenborough remarked that there
is no case to be met with in the books in which the right of a
carrier thus to limit, by special contract, his own responsibility
has ever been, by express decision, denied; and the authorities
in this country are to the same effect.

In *Express Co.* v. *Caldwell*, 21 Wall., 264, it is declared to be
settled law that the responsibility of a common carrier may be
limited by an express agreement with the shipper, provided
the limitation be reasonable and not inconsistent with public
policy.    And although there is a conflict of authority on the
subject, the weight of authority, undoubtedly, is in favor of
the proposition that a carrier may by special agreement, fairly
made, limit his common law liability, even for losses occasioned
by his own negligence or that of his servants.

The leading case on the subject is *Hart* v. *Pennsylvania Rail-
road Co.*, 112 U. S., 331, in which it was decided that where a
contract of carriage, signed by the shipper, is fairly made with
a railroad company, agreeing on a valuation of the property
to be transported, with a rate of freight based on the condition
that the carrier assumes liability only to the extent of the
agreed valuation, even in case of loss or damage by the negli-

gence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.

In that case the plaintiff shipped five horses in one car over the defendant's road, under a bill of lading, signed by him, which stated that the horses were to be transported "upon the following terms and conditions, which are admitted and accepted by me as just and reasonable: *First,* to pay freight thereon," at a rate specified, " on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation : If horses, *not exceeding* $200 *each.*" By the negligence of the defendant's servants, one of the horses was killed, and the others were injured, and the action was brought to recover damages therefor. At the trial it appeared that the horses were race-horses, and the plaintiff offered to show damages, based on their value, amounting to over $25,000 ; but the evidence was excluded, and this ruling was affirmed.

In the course of its opinion, the supreme court, after remarking that as the rate of freight expressed was stated to be on the condition that the defendant assumed a liability to the extent of the agreed valuation named, the fair inference was that the rate of freight was graduated by the valuation, and that this was a reasonable qualification of the carrier's liability, said :

" There is no justice in allowing the shipper to be paid a larger value for an article which he had induced the carrier to take at a low rate of freight on the assertion and agreement that its value is less than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage, if there is no loss ; and the

effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract."

And then the court went on to say that, " The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

This reasoning, which seems to us sound, is supported by numerous adjudged cases, and is decisive of the present case. The contract in question shows on its face that in consideration of certain risks being assumed by the plaintiff, and the further stipulation that in the event of loss or damage, no greater sum than one hundred dollars would be claimed for any one horse, the company agreed to transport the plaintiff's horses at a reduced rate. The plaintiff, as the evidence shows, had choice of rates—a reasonable one, without limitation as to the defendant's liability, the other lower with a limitation of liability, and he chose the latter.

In all this there was nothing objectionable. The defendant

stipulates in the bill of lading, not for exemption from liability for the negligence of its servants, or from the obligation to exercise diligence and care, but for a liability commensurate with the value of the property shipped and the compensation received. That value was in effect agreed on in the contract, and, for the purposes of the present case, it must be assumed that the property had no greater value. In such a case the principle of estoppel applies with full force and conclusive effect. There is no charge of fraud or imposition; the contract was fairly entered into, and the limitation in question is not inconsistent with public policy. Indeed, as was said in *Hart's case*, to permit the plaintiff to repudiate the contract, would be repugnant no less to public policy than to fair dealing, and the present case is not distinguishable in principle from that case. See, also, *Graves* v. *Lake Shore, &c., R. R. Co.*, 137 Mass., 33; *Hill* v. *Boston, &c., R. R. Co.*, 144 *Id.*, 284.

It follows that, in refusing to give the above-mentioned instruction to the jury, the circuit court erred, and for this error the judgment must be reversed, and the case remanded for a new trial.

Judgment reversed.