## Richmond.

NORFOLK & WESTERN RY. CO. v. OLD DOMINION BAGGAGE CO.

JANUARY 17, 1901.

1. CONSTRUCTION OF STATUTES—*Foreign Statutes—Construction—Subsequent Enactment.*—When the construction of a foreign statute has been settled by a number of decisions, and the Legislature enacts that statute in the same words, it must be presumed that the construction placed upon the statute was adopted along with the statute.

2. RAILROADS—*Special Privileges at Stations—Acts 1891-'2, p. 695.*—Adopting the construction placed by the English courts on the English Railway and Canal Traffic Act of 1854, which must control in the interpretation of the Act of Assembly approved March 3, 1892 (Acts 1891-'2, p. 695), railroad companies have the right to exclude from their stations and grounds persons who resort thereto, not for the purpose of using the railroad, nor for the public convenience, but solely for their private gain.

Appeal from a decree of the Circuit Court of the city of Lynchburg, pronounced June 17, 1899, in a suit in chancery, wherein the appellee was the complainant, and the appellant and another were the defendants.

*Reversed.*

The opinion states the case.

*F. S. Kirkpatrick* and *Jos. I. Doran,* for the appellant.

*Caskie & Coleman,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bill in this case was filed by the Old Dominion Baggage Transfer Company, alleging that it was engaged at Lynchburg

in the baggage transfer business; that the Lynchburg Baggage Transfer Company was engaged in a rival business at the same place, and that complainant and its rival had both theretofore been allowed to enter the grounds of the appellant, attached to the Union Station, for the purpose of soliciting baggage from persons alighting from the trains at that point; that the appellant had since leased to its rival, the Lynchburg Baggage Transfer Company, the right to solicit incoming baggage at the said station, and had refused to allow complainant to enjoy the same privilege; that, in consequence of being excluded by appellant from its station premises, the private business of complainant had been practically destroyed.

The prayer of the bill is that the Norfolk and Western Railway Company may be restrained from giving, and the Lynchburg Transfer Company from receiving, the undue preference and advantage complained of, and that the appellant may be required to furnish appellee the same or equally as good facilities as are furnished to the Lynchburg Transfer Company in the conduct of its business.

From a decree granting the relief asked by appellee, this appeal has been taken.

There is no allegation in the bill that appellee has been prevented or hindered, in any way, from delivering or receiving baggage at the station, for the travelling public employed by it for that purpose, or that the travelling public has, in any way, been inconvenienced or interfered with at the station in the delivery or removal of baggage for which appellee held checks or orders. The sole ground of complaint is that appellee has been denied, by appellant, the privilege of using its station for the purpose of soliciting the delivery of baggage from persons arriving upon its trains. The question presented involves the construction of section 3 of an act to regulate carriers, approved March 3, 1892, which appellee insists is violated by the refusal of appellant to allow it the same rights in the matter of soliciting

baggage that is extended to the Lynchburg Transfer Company. That act is in the following words:

"It shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Acts 1891-'2, p. 695.

This law was originally passed by the Legislature in 1867 (Acts 1866-'67, p. 725), and has been continuously in force until the present time. It was taken from, and is in the words of, section 2 of the English Railway and Canal Traffic Act, 1854, 17 and 18 Vict., chap. 31. The Legislature having taken from the English act the language used in section 3 of the act approved March 3, 1892, adopted therewith the construction placed upon that language by the English courts. In *Doswell* v. *Buchanan*, 3 Leigh, 394, 410, Carr, J., said: "It is admitted that when the construction of an English statute has been settled by a series of decisions, and our Legislature enacts that statute *in totidem verbis*, the construction must be considered as adopted along with the statute."

In *Danville* v. *Pace*, 25 Gratt. 1, 5, Staples, J., said: "It is not to be supposed that the Legislature incorporated into our laws an important statute of another State in ignorance of the interpretation given to it by the courts of that State. It must be presumed, rather, that the Legislature, in adopting the precise phraseology, intended to adopt along with it the interpretation also."

In *Mangus* v. *McClelland*, 93 Va. 786, Keith, P., said: "It is a familiar rule of construction that when a statute has been construed by the courts, and is then re-enacted by the Legislature, the construction given to it is presumed to be sanctioned

by the Legislature, and thenceforth becomes obligatory upon the courts."

This rule of construction has been applied by the Supreme Court to the same section of the English Traffic Act now under consideration, from which was also taken the third section of the Interstate Commerce Act.

In *I. C. C.* v. *B. & O. R. Co.*, 145 U. S. 263, Mr. Justice Brown said: " But so far as relates to the question of 'undue preference,' it may be presumed that Congress, in adopting the language of the English act, had in mind the construction given to these words by the English courts, and intended to incorporate them into the statute."

In view of this settled rule of construction, we must look to the interpretation which had been put upon the English act by the English courts, at the time of its adoption by the Legislature in 1867, and be guided by those decisions in interpreting the legislation in question.

In the early English case of *Barker* v. *Midland Ry. Co.*, 86 Eng. Com. Law Reports, 45 (C. B. 1856), the plaintiff sued the railway company for refusing to permit him to drive on its station premises with his omnibus for the purpose of taking persons to the station and bringing others away. All of the judges delivered opinions holding that the case was not within the English Traffic Act (1854), 17 and 18 Vict., saying that it would be extraordinary if any such right existed in one to whom the company owed no direct duty; that the plaintiff was not a person wishing to travel by the railway, or to send goods by it, but a person who carries to and from the railway persons who are desirous of using, or who have used the railway; that the action had neither principle nor any color of authority to sustain it.

In the case of *Beadell* v. *Eastern Counties Ry. Co.*, 89 Eng. Com. Law Reports, 509 (C. B. 1857), the railway company had agreed with a cab proprietor, in consideration of his paying 600

pounds *per annum*, to allow him the exclusive privilege of plying for hire with flys within the station. Another cab proprietor sought an injunction against the railway company under the English Traffic Act, but as he failed to allege or prove inconvenience to the public arising from the arrangement, and showed only private damages, an injunction was refused, Williams, J., saying: " The affidavits upon which this motion is founded do not show that the agreement with Clark is not highly beneficial to the public, as well as to the company. And it has been expressly laid down, in a case which has not been cited—*In Re Barret*—that the statute in question was passed for the benefit of the public, and not for that of individuals."

In the case of *Painter* v. *The London, Brighton & S. C. Ry. Co.*, 89 Eng. Com. Law Reports, 705 (C. B. 1857), the railway company had granted exclusive permission to a limited number of fly proprietors to ply for hire within the station. One of the fly proprietors, who had been excluded from participation in the arrangement, sought an injunction against the company, under the English Traffic Act, which was refused, Creswell, J., saying: " I am of opinion that no ground is presented to justify the interference of the court. Before we put the powers of the Act in motion, we must be satisfied that there is some substantial injury or inconvenience to the public, and that the complaint is *bona fide* made on behalf of the public." Williams, J., said: " The complaint must come from those who use the railway."

These cases had all been decided some years before the adoption of the English act by the Legislature in 1867. The construction put by them upon the act has since been repeatedly approved by the English courts. In the recent case of *Perth Gen. Station Com't* v. *Ross* (1897), Appeal Cases, 479, it was held that a railway company, owning a hotel of their own within the limits of the station, may qualify their permission to other hotel proprietors and their servants, to have free access to the platform with the condition that, on those occasions, no hotel

servant should wear a distinctive badge or livery; Lord McNaghten saying: " The question seems to be this: Is the respondent, when not using or desirous of using the railway, entitled as of right, by himself or his servants, to enter the station? Or to put the question in simpler form, are the appellants entitled to exclude all persons other than those who use or are desirous of using the railway? \* \* \* It seems to me that the question of law was decided, and decided rightly, forty years ago by the Court of Common Pleas in the case of *Barker* v. *Midland Ry. Co.*," *supra.* Thus as late as 1897 the construction put upon the English act in 1856 is adhered to and approved.

Treating this construction as incorporated into section 3 of the act of 1892, when that act was adopted by the Legislature in 1867, it is obvious that the position taken by appellee cannot be maintained.

Inasmuch as the construction put upon the statute in question by the English courts, prior to our adoption of it, is conclusive of the case at bar, we have deemed it unnecessary to cite numerous decisions of the American courts placing the same construction upon statutes similar to our own.

For these reasons the decree appealed from must be reversed, and this court will enter such order as the lower court ought to have entered, dismissing appellee's bill, with costs.

*Reversed.*