Syllabus.

# Richmond.

CHESAPEAKE & OHIO RAILWAY COMPANY v. BEASLEY,

COUCH & COMPANY.

January 18, 1906.

1. COMMON CARRIERS—*Liability for Baggage—Reasonable Time to Remove.*—A common carrier of passengers is an insurer of its passengers' baggage during transportation, and for such a time thereafter as affords the passenger a reasonable opportunity to remove it. What is such reasonable time depends upon the circumstances of the particular case, such as the character of the station, the opportunities afforded for delivering such baggage when called for, and the like. From this duty to safely carry and deliver the common carrier can only be exonerated by the act of God or a public enemy. In the case at bar, a reasonable opportunity was not afforded the passenger to remove his baggage.

2. COMMON CARRIER—*Contracts Against Negligence—Limiting Liability—Case at Bar—Agreed Valuation of Baggage.*—A contract with a common carrier whereby, in consideration of a reduced rate, a shipper agrees to accept an agreed value, less than the true value, of goods lost by the negligence of the carrier is invalid in this State, where it is declared by statute that "no agreement made by a transportation company for exemption from liability for injury or loss occasioned by its own neglect or misconduct as a common carrier shall be valid." To limit is simply to exempt *pro tanto*, and hence is alike forbidden. It is immaterial that the contract was fairly entered into for a valuable consideration. It is void, not because it is unreasonable, but because the Legislature has declared all such contracts invalid, whether reasonable or unreasonable. In the case at bar, a passenger was traveling on a mileage ticket purchased at a reduced price, and signed a contract providing that in case of loss or damage to baggage no claim should be made therefor in excess of $100. Baggage worth $600 was lost through the negligence of the carrier, and it was held liable for the full amount.

Error to a judgment of the Circuit Court of Botetourt county in an action of trespass on the case.    Judgment for the plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert L. Parrish,* for the plaintiff in error.

*Benjamin Haden,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

On March 1, 1903, H. A. Dudley, a traveling salesman representing the defendant in error, purchased of plaintiff in error a one-thousand-mile ticket, upon which he was entitled to travel in the passenger trains of plaintiff in error, and to carry with him free of charge one hundred and fifty pounds of baggage. The price of this ticket was one-half a cent per mile less than the regular fare, and in consideration of this reduced charge, Dudley signed a contract on the back of the ticket, which provides, in part, as follows: "That in the event of loss or damage to baggage, no claim shall be made therefor in excess of $100.00."

On February 1, 1904, Dudley had three trunks, weighing six hundred pounds, checked on this ticket at Buena Vista, in Rockbridge county, to Eagle Mountain station, in Botetourt county, paying ninety cents for the baggage in excess of one hundred and fifty pounds.    The train reached Eagle Mountain station about twenty-five minutes after seven in the evening. Dudley went to a hotel, and his baggage was taken by the agents of the railroad company to its baggage room to be weighed. About an hour after the arrival of the train, the agent closed the station, locked up the baggage, and went home.    Shortly after midnight the station was consumed by fire, and the baggage destroyed.

This suit was brought by the defendant in error, as assignee of H. A. Dudley, to recover damages for the destruction of the three trunks, which contained sample goods. Upon a demurrer to the evidence by the defendant company, judgment was given by the Circuit Court in favor of the plaintiff for $605.42, the amount ascertained by the verdict of the jury to be the value of the plaintiff's goods.

The first contention of plaintiff in error is that the fire resulted from no negligence on its part, and that its liability was not that of a common carrier but a warehouseman.

A common carrier is an insurer of the goods it undertakes to carry for hire, and is bound to deliver the same safely; and from this duty can only be exonerated by the act of God or of a public enemy. A carrier's liability, as such, for a passenger's baggage continues during transportation, and for such a time thereafter as affords the passenger a reasonable opportunity to remove it. In determining what is a reasonable time for removing the baggage after reaching its destination, the peculiar circumstances surrounding each case must be looked to, such as the character of the station, the opportunities afforded by the common carrier for delivering baggage when called for, etc. *Penn. Co.* v. *Liveright* (Ind. App.), 41 N. E.; *Wald* v. *L. E. & St. L. R. Co.,* 92 Ky. 645, 18 S. W. 650, 58 Am. & Eng. Ry. Cas. 123; *Mote* v. *Chicago, &c., R. Co.,* 27 Iowa 22, 1 Am. R. 212; *Roth* v. *R. Co.,* 34 N. Y. 548, 90 Am. Dec. 736; *Burnell* v. *Ry. Co.,* 45 N. Y. 184, 6 Am. Rep. 61.

The record shows that the weather on the night in question was unusually severe. The station was so situated and blocked with freight cars as to make it practically impossible to deliver the trunks that night. The agent testifies that after the train left he first put away his express; that then he would weigh the trunks before allowing them to be removed; that he left the station in about an hour after the train arrived, locking the trunks up in the baggage room, and went to his home; and that he would not have returned that night for any cause less

than fire.   He says that if the trunks had been demanded before he left the station they would have been delivered, but further says that there were only two ways in which the trunks could have been removed, one by taking them out on the railroad track and wheeling them down, which he says a reasonable man would hardly have attempted, and the other was to break the seal of a loaded freight car and make a passage-way through it; that this last was the only practicable way in which the trunks could have been gotten from the depot and delivered that night; that the station hands had gone away some little time before he left, and that the trunks could not then be removed.   He further says that Dudley was not informed that the trunks could be removed by opening the sealed and loaded freight car and taking them through it; and that appearances were such as to justify him in believing that they could not have been gotten out of the depot in that way.

We are of opinion, upon the whole evidence, that Dudley was not afforded a reasonable opportunity to remove his baggage on the night of his arrival at Eagle Mountain.   Indeed, it is quite clear that the railroad company did not contemplate the removal of the baggage that night.

The second assignment of error is to the action of the Circuit Court in giving judgment in favor of the defendant in error for $605.42, with interest, the amount ascertained by the jury to be the value of the three trunks and their contents, instead of $100.00, the amount agreed upon, as shown by the contract, in the event of loss or damage to the baggage; the language of the fourth clause of the contract being, in part, as already seen as follows:   "That in the event of loss or damage to baggage, no claim shall be made therefor in excess of $100.00."

The decision of this question involves the construction of our statute upon the subject.

·When the mileage ticket which contains this contract was purchased, section 1296 of the Code of Virginia of 1887 was in force.   It declared that, "no agreement made by a common

carrier for exemption from liability for injury or loss occasioned by his own neglect or misconduct, shall be valid." The law in force on February 1, 1904, when Dudley took passage upon this ticket, was passed on January 18, 1904, and is found in Va. Code, 1904, sub-section 25 of section 1294c, which reads as follows: "No agreement made by a transportation company for exemption from liability for injury or loss occasioned by its own neglect or misconduct as a common carrier shall be valid;" language which is similar to, but not wholly identical with section 1296 of the Code of 1887, in place of which it stands.

In *Richmond & Danville R. Co.* v. *Payne,* 86 Va. 481, 10 S. E. 749, 6 L. R. A. 849, this subject was under consideration, and it was said: "There is no doubt that a common carrier cannot lawfully stipulate for exemption from liability for the consequences of his own negligence or that of his servants. This was decided in an elaborate opinion by the Supreme Court of the United States in *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 21 L. Ed. 627, and by this court in *Railroad Co.* v. *Sayers,* 26 Gratt. 328; and the principle is now brought into the Code, sec. 1296 of which declares that 'no agreement made by a common carrier for exemption from liability for injury or loss occasioned by his own neglect or misconduct shall be valid.'

"But that is not the question before us. The question here is whether, when the shipper signs a bill of lading, not exempting the carrier from liability for the negligence of himself or his servants, but *limiting* the amount in which the carrier shall be liable, in consideration of the goods being carried at reduced rates, such a contract, fairly entered into, is valid and binding; and we see no reason why, when its terms are just and reasonable, it should not be. The test to be applied in all such cases is, was the contract fairly entered into, and are its terms just and reasonable?

"At common law, it is true, the carrier is chargeable as an insurer, unless loss or damage occur by the act of God, or the public enemy. But as the law now is, he may, by special con-

tract, restrict his liability for losses otherwise occurring.   In-
deed, he may by such agreement exempt himself absolutely from
any liability for damage not caused by the negligence or default
of himself or his servants.   And the owner and shipper, by en-
tering into the contract, 'virtually agrees that, in respect to the
particular transaction, the carrier is not to be regarded as in the
exercise of his public employment, but as a private person, who
incurs no responsibility beyond that of an ordinary bailee for
hire, and answerable only for misconduct or negligence.' "   In
support of these propositions the court cites *New Jersey Steam
Nav. Co.* v. *Merchant's Bank,* 6 How. 344, 12 L. Ed. 465;
2 Pars. Cont. (6th Ed.), 233; *Nicholson* v. *Wilson,* 5 East.
507, where Lord Ellenborough remarked, that there is no case
to be met with in the books in which the right of a carrier thus
to limit, by special contract, his own responsibility has ever been,
by express decision, denied; and *Express Co.* v. *Caldwell,* 21
Wall. 264, 22 L. Ed. 556.   The opinion then goes on to say,
that "the leading case on the subject is *Hart* v. *Pennsylvania
Railroad Co.,* 112 U. S. 331, 28 L. Ed. 717, 5 Sup. Ct. 151,
in which it was decided that where a contract of carriage, signed
by the shipper, is fairly made with a railroad company, agree-
ing on a valuation of the property to be transported, with a rate
of freight based on the condition that the carrier assumes lia-
bility only to the extent of the agreed valuation, even in case of
loss or damage by the negligence of the carrier, the contract will
be upheld as a proper and lawful mode of securing a due pro-
portion between the amount for which the carrier may be re-
sponsible and the freight he receives, and of protecting himself
against extravagant and fanciful valuations.   The limitation as
to value has no tendency to exempt from liability for negligence.
It does not induce want of care.   It exacts from the carrier the
measure of care due to the value agreed on.   The carrier is
bound to respond in that value for negligence.   The compensa-
tion for carriage is based on that value.   The shipper is estop-
ped from saying that the value is greater.   The articles have

no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss.' "

It is to be observed that in *Hart* v. *Pennsylvania Railroad Co.,* *supra,* which seems to have controlled the decision in *R. & D. R. Co.* v. *Payne, supra,* there was no statute involved; while with us the statute expressly declares that a contract by which a common carrier undertakes to "exempt" itself from liability for injury or loss occasioned by its own neglect or misconduct, is void. The decision of this case must depend upon the meaning to be attributed to the word "exempt" in our statute.

If the carrier may limit its liability, though disabled by statute from exempting itself from liability, then the act of the Legislature is of little worth. The common law imposes upon railroad companies, as common carriers, the obligation to pay in full for property lost by them, which they have undertaken to transport, or damages to the extent of any injury which such property may have sustained. *St. Louis Ry. Co.* v. *Sherlock* (Kan. Sup.), 51 Pac. 899.

It is conceded that a contract though resting upon a consideration mutually agreed upon between the parties and fairly entered into—would be void if it exempted the carrier from all liability. The value of the property lost in this case is fixed by the verdict of the jury at something more than six hundred dollars; the recovery is limited by the contract to $100. The common law liability, therefore of the carrier, is by virtue of this contract, if it be sustained, effaced and obliterated to the

extent of $500, or five-sixths, the value of the property.   It seems to us that to the extent to which the carrier is relieved from liability which the law would otherwise have imposed upon it, it is to be considered and treated as having undertaken to exempt itself, by force of its contract.

But it is said the limitation must be a reasonable one.   If, in the teeth of the statute, we are permitted to indulge in argument or conjecture as to what is in a particular case reasonable, where would the line be drawn?   In the case before us the recovery is diminished from six hundred dollars to one hundred dollars.   Is that the limit of reasonableness?   By what standard is five-sixths of the valuation determined upon as a reasonable limitation or restriction?   Could not the estoppel upon the conscience of the shipper be urged with as much force if the value of the goods had been fixed by the contract at fifty or twenty dollars?   It would still have been an agreement between parties capable of contracting, fairly entered into, and for a valuable consideration.   It is void, not because it is unreasonable, but because the Legislature has seen fit to declare that all such contracts, whether reasonable or unreasonable, are invalid.

We do not perceive the force of the reasoning which would give operation and validity, by way of estoppel, to a contract which the law-making power has declared to be void as repugnant to public policy.   In the case of *Hart* v. *Penna. R. Co., supra,* there was, as we have said, no statute affecting the contract.   We do not believe that the Legislature, in passing the statute, either as it appears in the Code of 1887, or in that of 1904, meant to strike at contracts which exempt from liability, and leave untouched and in full force those which by limitation and restriction accomplish substantially the same purpose.   Experience has shown that the shipper does not stand upon an equal footing with the carrier.   He is at a disadvantage in contracting with the carrier.   This the Legislature well knew, and this was the evil which it intended to suppress.   The statute was

designed to go to the very root of the trouble, and to declare all such contracts invalid; and it was not contemplated, in our judgment, by the Legislature, that any such halting and half-hearted remedy should be applied to the situation as a prohibition upon contracts which exempt, while leaving the carrier free to impose such terms of restriction of liability as would still leave the shipper at its mercy.

In Page on Contracts, vol. 1, p. 567, it is said: "Under statutes forbidding carriers to limit their common law liability by contract, a limitation on the amount of damage is invalid. Under a statute forbidding a carrier to exempt himself by contract from his liability, the shipper is not bound by the value fixed by him, even if fixed too low in fraud of the railway company." In support of this, the case of *Lucas* v. *Ry.,* 112 Ia. 594, 84 N. W. 673, is cited.

The Iowa statute is almost identical with our own. It provides that no contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from liability of a common carrier which would exist had no contract, receipt, rule or regulation been made or entered into; a provision somewhat more elaborate, but in all essential respects identical with our own.

The syllabus of the Iowa case, *supra,* is as follows: "As the limitation, in a contract of shipment of a horse, of the carrier's liability to $100, the 'released value of the horse' named in the contract, renders the contract void, under Code, section 2074, providing no contract shall exempt a railway from liability of a common carrier which would exist had no contract been made, fraud of the shipper in making representations to secure a cheaper rate of freight will not prevent his proving the full value of the horse."

This case is pertinent to the present discussion in two aspects. That statute of Iowa uses the word "exempt," as ours does, and yet the limitation by contract was held by the court to be in conflict with the statute and, therefore, invalid. In other words, the

limitation, to the extent that it diminished the common law lia-
bility of the carrier, was treated as an exemption from liability,
and "limit" and "exempt" were construed as words of synony-
mous meaning. In that case too it appears that so far from the
court imputing validity to the contract by way of estoppel, it
declares that the "fraud of the shipper in making representa-
tions to secure a cheaper rate of freight will not prevent his
proving the full value of the horse." Such was the vigor of the
statute that it served to destroy the contract, and the shipper
was permitted to recover the full value of the property shipped,
although a cheaper rate of freight had been secured by false
representations upon his part.

In *Louisville, &c., R. Co.* v. *Wynn,* 88 Tenn. 320, 14 S. W.
311, a mare had been shipped without inquiry as to her value,
and the shipper had received a receipt or contract which pro-
vided, in general terms, that in case of injury to any horse ship-
ped under it for which the railroad company might be liable, the
amount claimed should not exceed $100. In construing this
contract and passing upon its validity, the court said: "Mani-
festly the stipulation does not contemplate total exemption from
liability; it only provides for partial or limited exemption.
Upon that distinction the nice and important question arises,
can a stipulation of the latter character stand before the law
when one of the former kind cannot? Or, to state the same
question differently, and so as to apply it more directly to the
facts of this case, the rule of law being established, as we have
seen it is, that the defendant company could not lawfully have
contracted with the plaintiff that it would in no event be liable
for any part of the value of the mare if lost or destroyed, can the
limitation of its liability to $100 be upheld in the courts, if it
should appear that her death resulted from the negligence of the
company, and that she was in fact worth eight times that
amount, as the jury found her to be? We unhesitatingly an-
swer, No. The carrier cannot by contract excuse itself from
liability for the whole nor any part of a loss brought about

by its negligence.   To our minds it is perfectly clear that the two kinds of stipulation—that providing for total, and that providing for partial exemption from liability for the consequences of the carrier's negligence—stand upon the same ground and must be tested by the same principles.   If one can be enforced the other can; if either be invalid, both must be held to be so, the same considerations of public policy operating in each case.

"With great deference for those who may differ with us, we think it entirely illogical and unreasonable to say that the carrier may not absolve itself from liability for the whole value of property lost or destroyed through its negligence, but that it may absolve itself from responsibility for one-half, three-fourths, seven-eights, nine-tenths, or ninety-hundredths of the loss so occasioned.   With great unanimity the authorities say it cannot do the former.   If allowed to do the latter it may thereby substantially evade and nullify the law which says it shall not do the former, and in that way do indirectly what it is forbidden to do directly.   We hold that it can do neither.   The requirement of the law has ever been, and is now, that the common carrier shall be diligent and careful in the transportation of its freight, and public policy forbids that it shall throw off that obligation, whether by stipulation for exemption in whole or in part from the consequences of its negligent acts."

The contract construed in that case is almost identical with the one before us.   There was no statute and the court dealt with it as one controlled by the common law.   The opinion is convincing, and is supported by numerous authorities.   It would be easy to multiply adjudicated cases and text-writers treating "exemption" and "limitation" of liability as convertible terms. This will be apparent from an inspection of *Railroad Co.* v. *Sayers, supra,* and the authorities there cited.

We rest our conclusion upon the force of the statute law of the State.   If the statute was meant to declare the common law, and to cover the whole subject embraced by the common law,

then it cannot be doubted, we think, that the Legislature never intended to diminish the protection which the common law afforded to the shipper, and that interpretation must be given to the statute which makes it co-extensive with the common law. If, however, the statute was not intended to cover the whole subject, but merely to prohibit total exemption from liability, then the partial exemption, the restriction, the limitation upon liability, rests where it was at the common law.

It has been suggested that as the section under consideration has been, in substance, re-enacted since the decision in *R. & D. R. Co.* v. *Payne, supra,* the Legislature is to be deemed to have approved that decision. There would be more force in this position had that case turned upon an exposition of the statute; but it is plain from the opinion that the statute was introduced by way of recital, and that the controlling influence with the court in its conclusion was the case of *Hart* v. *Railroad Co., supra.* In this view we are strengthened by the fact that in the petition for the writ of error in *Railroad Co.* v. *Payne,* no allusion is made to the statute, though it is adverted to in appellant's reply brief, and it is altogether probable that the court meant to adhere to the view entertained by it when *Melendy & Russell* v. *Barbour, Receiver,* 78 Va. 544, was decided. In that case the parties agreed that the carrier should not be liable under any circumstances, nor for any cause, beyond the sum of $200, for injury to or loss of any animal carried pursuant to the agreement, although the actual value of that animal might exceed that amount. This limitation was earnestly insisted upon by the carrier, but was thought to be of so little force that it is not mentioned in the opinion of the court; and notwithstanding the contract limiting the value to $200, the decree of the court below allowing the plaintiffs to recover $1,000, was reversed in this court as inadequate, and the cause remanded to the Circuit Court with instructions to frame an issue and empanel a jury to try the question as to damages incurred by appellants through

the negligence of the defendant company.    It thus appears that the contract in that case was wholly disregarded, and the rights of the parties were fixed precisely as they would have been had there been no contract.

The conclusion of the whole matter may, in our view, be summed up as follows:    At common law the carrier could not by contract limit or restrict his liability for injury or loss caused by the negligence of himself or his servants.    The object of the Legislature was to give to this recognized common law principle the force of a statute; and it would indeed be a singular outcome of an effort on the part of the Legislature to give an added sanction to the common law, if by ingenious construction the power to limit should be deduced from the prohibition to exempt.

BUCHANAN, J., dissenting:

In so far as the opinion of the court overrules the decision in the case of *Richmond & Danville Railroad Co.* v. *Payne,* 86 Va. 481, 10 S. E. 749, 6 L. R. A. 849, I dissent from it.

It was held in that case that while section 1296 of the Code of 1887 did not permit a common carrier to *exempt* itself from liability for its own negligence, or the negligence of its servants, yet it did not prevent it from entering into a contract limiting the amount for which it should be liable, in consideration of the goods being carried at reduced rates, provided the contract was fairly entered into and its terms were just and reasonable.

Whatever may be thought of the correctness of that decision, the question decided is, in my judgment, no longer an open one in this State.    That decision was made in January, 1890, nearly fifteen years ago.    By an act approved January 18, 1904 (Acts, 1902-3-4, p. 968), the statute law of the State in reference to public service corporations was revised so as to conform to the provisions of the present Constitution of the State.    Whilst many radical changes were made by the act, no alteration was

made in the language of section 1296 of the Code of 1887, except to make it apply to all transportation companies, in performing their duties as common carriers; and, as amended, it was re-enacted as cl. 25 of ch. 3 of that act (p. 980), and now appears as cl. 25 of sec. 1294c of the Code of 1904.

It is a well settled rule of construction that when a foreign statute, which has been construed by the courts of that State, has been incorporated into the laws of this State, it must be presumed that the Legislature intended to adopt the interpretation placed upon the statute by the courts of the foreign State. *Doswell* v. *Buchanan,* 3 Leigh. 394, 410, 23 Am. Dec. 280; *Danville* v. *Pace,* 25 Gratt. 1, 5, 18 Am. Rep. 663; *N. & W. Ry Co.* v. *O. D. Baggage Co.,* 99 Va. 111, 37 S. E. 784, 50 L. R. A. 722; *N. & W. Ry. Co.* v. *Cheatwood's Admr.,* 103 Va. 356, 367, 49 S. E. 489.

If this be true of a foreign statute incorporated into our laws, it must *a fortiori* be true in the re-enactment of a statute which has been construed by this court.

In *Mangus* v. *McClelland,* 93 Va. 786, 789-90, 22 S. E. 364, 365, it was said, that "it was a familiar rule of construction, that where a statute has been construed by the courts, and is then re-enacted by the Legislature, the construction given it is presumed to be sanctioned by the Legislature, and thenceforth becomes obligatory upon the courts. See *Anable's Case,* 24 Gratt. 563, where this rule of construction was held to be binding upon courts even in criminal cases, and *a fortiori* it is binding upon them in civil cases." See also *Swift & Co.* v. *Wood,* 103 Va. 494, 496, 49 S. E. 643, where it is reiterated that such a construction is *obligatory* upon the courts.

In my humble judgment, the construction placed upon section 1296 of the Code of 1887, by this court in *R. & D. R. Co. v. Payne, supra,* is as much binding upon the courts since the re-enactment of that section as clause 25 of section 1294c of the Code of 1904, as if the Legislature had declared in the body of the statute that it should not be construed as prohibiting a com-

mon carrier from entering into a contract limiting the amount of·
its liability in consideration of the goods being carried at reduced
rates, provided the contract be fairly entered into and its terms
be reasonable and just.    To hold otherwise it seems to me, with
all deference to the majority of the court is, not merely over-
ruling a former decision of this court, but is repealing to that
extent· an act of the Legislature.

HARRISON, J., dissenting:

I concur in the veiw that the liability of the plaintiff in
error, in this case, was that of a common carrier, and not that
of a warehouseman.    I am constrained, however, to dissent from
the conclusion reached by a majority of the court, that the plain-
tiff in error was not entitled to limit its liability, in the event
of loss or damage to baggage, in consideration of a reduced
charge for transportation.

A common carrier cannot lawfully stipulate for *exemption*
from liability for the consequence of its own negligence, or that
of its servants.    This is the common law doctrine, which has
been more than once announced by this court.    *Railroad Co.* v.
*Sayers,* 26 Gratt. 328.

At the time of the purchase of the ticket here involved (March
1, 1903), this common law rule had been carried into section
1296 of the Code of 1887, which provides as follows:    "No
agreement made by a common carrier for exemption from lia-
bility for injury or loss occasioned by his own neglect or mis-
conduct, shall be valid."

When the fire was first discovered, it was burning on the in-
side of the station building.    Its origin does not clearly appear,
but assuming that it was the result of negligence on the part of
the agents of ·the defendant company, the question to be deter-
mined is, whether, in view of sec. 1296, *supra,* a common car-
rier can make a valid and binding contract, not *exempting* the
carrier from liability for the negligence of itself or its servants,
but *limiting* the amount in which the carrier shall be liable, in
consideration of carriage at a reduced rate.

This question was settled in this State by a well considered opinion, in which it is held that the statute was merely declaratory of the common law, and that such a contract fairly entered into is valid and binding, the court saying: "We see no reason why, when its terms are just and reasonable, it should not be. The test to be applied in all such cases is, was the contract fairly entered into, and are its terms just and reasonable?" *Richmond & D. R. Co.* v. *Payne,* 86 Va. 481, 10 S. E. 749, 6 L. R. A. 849.

In the case at bar, there is no question that the contract was fairly made, that Dudley secured a reduced charge for transportation, and that he signed the contract agreeing to a valuation of $100.00 for any loss or damage to his baggage, in consideration of the reduced charge for travel.

The cases involving this question are numerous and conflicting, different rules prevailing in different States. In the *Payne Case, supra,* this court followed the view repeatedly announced by the Supreme Court of the United States. I think the weight of authority and the better reason is in favor of that rule. It rests upon the theory that the agreement to limit the liability, in consideration of a reduced charge, is nothing more than a contract in advance, by which the parties agree upon and fix the value of the thing transported so that the shipper cannot pay for shipping property of one value at a reduced rate and when loss occurs demand payment upon another and higher valuation. The traveler or the shipper has two courses open to him, either of which he has the free and untrammeled right to adopt. He can either pay the regular fare and carry his goods at an unlimited valuation; or he can pay the reduced charge and carry them at the valuation then agreed upon in consideration of such reduced cost of transportation. No reason is perceived why such a contract, fairly made, should not be valid and binding. It is not inconsistent with public policy. Indeed, it has been said that to permit a party to repudiate such

---

---

a contract would be repugnant no less to public policy than to fair dealing. *Hart* v. *Penn. R. Co.*, 112 U. S. 331, 28 L. Ed. 717, 5 Sup. Ct. 151, and cases cited. The principle settled by this case has been followed in a number of subsequent decisions of the Supreme Court. See the more recent cases of *Chicago, &c., R. Co.* v. *Solan*, 169 U. S. 133, 42 L. Ed. 688, 18 Sup. Ct. 289; *Calderon* v. *Atlas Steamship Co.*, 170 U. S. 272, 42 L. Ed. 1033, 18 Sup. Ct. 588; *Penn. R. Co.* v. *Hughes*, 191 U. S. 477, 48 L. Ed. 268, 24 Sup. Ct. 132, and the cases there cited.

Apart, however, from the merits of the question at issue, it is, in my opinion, upon well settled principles, beyond the reach of further judicial inquiry, so far as this jurisdiction is concerned. As already seen, this court in *Richmond & D. R. Co.* v. *Payne, supra,* construed section 1296 of the Code of 1887, holding that, notwithstanding the statute, a common carrier could *limit* its liability in consideration of reduced charges for transportation, if the contract was fairly entered into and its terms were just and reasonable. By act approved January 18, 1904, before this cause of action arose, section 1296 of the Code of 1887, was re-enacted by the Legislature, in practically the same words, as follows: "No agreement made by a transportation company for exemption from liability for injury or loss occasioned·by its own neglect or misconduct as a common carrier shall be valid." Acts, 1902-3-4, p. 968; cl. 25, sec. 1294c, Va. Code, 1904. It has now been fifteen years since section 1296 of the Code of 1887, was construed in *R. & D. R. Co.* v. *Payne, supra.* During all of that time, although recently re-enacted by the Legislature, no change has been made in the statute which affects the interpretation then given to it.

In *Mangus* v. *McClelland,* 93 Va. 786, 22 S. E. 364, this court said: "It is a familiar rule of construction that, when a statute has been construed by the courts, and is then re-enacted by the Legislature, the construction given to it is presumed to be sanctioned by the Legislature, and thenceforth becomes obli-

gatory upon the courts.  See *Anable's Case,* 24 Gratt. 563, where this rule of construction was held to be binding upon courts even in a criminal case, and *a fortiori* is binding upon them in civil cases."

This doctrine has long been accepted and acted upon as settled law in this State, in those cases where foreign statutes are adopted by our Legislature, as well as where our own statutes are re-enacted.  *Doswell* v. *Buchanan,* 3 Leigh. 394, 23 Am. Dec. 280; *Danville* v. *Pace,* 25 Gratt. 1, 18 Am. Rep. 663; *M. & W. Ry. Co.* v. *Old Dom. Bag. Co.,* 99 Va. 111, 37 S. E. 784, 50 L. R. A. 722; *Swift & Co.* v. *Wood,* 103 Va. 496, 49 S. E. 643.

In the light of these authorities, I am of opinion that, whatever may be the view of this court upon the question involved, as an original proposition, it cannot now be re-opened.   With full knowledge of the judicial interpretation given the statute, it has been accepted and acquiesced in for fifteen years, and now that it has been re-enacted, "the construction given to it is presumed to be sanctioned by the Legislature and has, therefore, become obligatory upon the courts."

For these reasons, I am of opinion that the judgment should be reversed.

*Affirmed.*