against him. It would serve no purpose to further discuss the evidence, and it is unnecessary to discuss other features of the case.

The judgment should be reversed, not only upon the ground that the defendant was not justified in believing the representations, even if made, but also upon the ground that the weight of the evidence shows that plaintiff did not make the representations alleged by the defendant to have been made by him.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

LEHMAN, J., concurs.

BIJUR, J. I concur, but on the ground that the alleged misrepresentations of the plaintiff are not actionable. The statement that the building was being altered and that plans had been filed were quite immaterial: First, because there was no agreement on plaintiff's part to make or complete any alterations; and, even if there had been, the fact that they were being made at any particular time would be of no importance, provided they were completed on time. The statement that the foundation wall ran through and through is not in the record connected with any matter of any importance, and the same criticism applies to it as to the other statements hereinabove set forth.

---

(81 Misc. Rep. 144.)

LANGSDORF et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate ·Term, First Department. June 17, 1913.)

1. CARRIERS (§ 89*)—LIABILITY AS BAILEE—GOODS REFUSED BY CONSIGNEE.
    After a carrier has notified the shipper that goods which it has transported have been refused by the consignee, the contract of carriage is completed, and the carrier is liable only as bailee.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 324–330; Dec. Dig. § 89.*]

2. CARRIERS (§ 89*)—LIABILITY AS BAILEE—INCORRECT NOTICE OF DELIVERY.
    Where a carrier, after notifying the shippers of the consignee's refusal to receive the goods, by mistake notified them that the goods had been delivered, and later corrected its mistake, it was not liable for negligence, since at that time it owed no duty to the shipper, except to use ordinary care in keeping the goods safely stored.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 324–330; Dec. Dig. § 89.*]

3. CARRIERS (§ 123*)—LIABILITY AS BAILEE—PROXIMATE CAUSE OF LOSS.
    Where the shippers knew from correspondence with the consignee that the goods had been refused on the ground that they were never ordered, and an attempt to collect for them was defeated on that ground, the erroneous notice by the carrier that the goods had been delivered, later corrected, even if a negligent violation of its duty, was not the proximate cause of the loss.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 506, 507, 539–543; Dec. Dig. § 123.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from City Court of New York, Trial Term.

Action by Sigmund Langsdorf and others against the New York Central & Hudson River Railroad Company. Judgment for plaintiffs, and defendant appeals. Reversed, and new trial ordered.

Argued May term, 1913, before LEHMAN, BIJUR, and WHITAKER, JJ.

Alexander S. Lyman, of New York City (William Mann, of New York City, of counsel), for appellant.

Horkheimer & Cohen, of New York City (B. S. Horkheimer, of New York City, of counsel), for respondents.

WHITAKER, J.    This is an action brought by the plaintiffs against the defendant for negligence of the defendant in failing to furnish plaintiffs with accurate information regarding the delivery of certain goods shipped by the plaintiffs on the railroad of defendant and consigned to Koehn & Koehn, at Chicago, Ill. The foundation of plaintiffs' claim is that on October 18, 1910, plaintiffs received notice from defendant that the goods in question had been delivered to the consignees, Koehn & Koehn, which notice was false, and upon which notice plaintiffs relied, and that on March 14, 1911, defendant notified plaintiffs that the notice of October 18th was false.

The goods were shipped by plaintiffs on defendant's railroad on September 2, 1910, and the freight paid. They were consigned to Koehn & Koehn at Chicago. The consignees were notified by the defendant of the arrival of the goods on September 12, 1910, and they refused to receive the goods on the ground that they had not ordered them. The defendant gave plaintiffs notice that the consignees refused to receive the goods on October 1, 1910. Whereupon plaintiffs notified the defendant that the goods had been specially ordered by the consignees and were their property, and plaintiffs refused to give defendant any orders for their disposal. The plaintiffs, however, had notice from the consignees themselves as early as September 13th that the consignees would not receive the goods, upon the ground that they had never ordered them, and plaintiffs notified the consignees that if they did not accept the goods they would remain at the depot, that plaintiffs would not take them back, and when the bill became due the plaintiffs would "know what to do," and on September 15th the consignees advised the plaintiffs of the arrival of the goods and that the storage on them would begin on September 10th, and that the consignees declined to accept them. On September 17th plaintiffs replied to the letter of the consignees and inclosed copies of the orders for the goods which they had received from the consignees, and stating that the goods would remain at the depot subject to the consignees' orders. This ended the correspondence between plaintiffs and consignees until January 1st, when plaintiffs sent a bill to consignees for the goods, which they refused to pay, and the plaintiffs put the matter in the hands of their lawyer for collection.

[1] When the goods arrived at Chicago, the destination, in good order, within a proper time, and notice was given to the consignees,

who refused to receive them, and the plaintiffs received due notice of such refusal, the contract of carriage by defendant was completed. It had done all it agreed to do, and was in no way responsible for the refusal of the consignees to receive the goods. The defendant was then holding the goods, not as a carrier, but as a bailee. Norfolk & Western Ry. Co. v. Stuart's Draft Milling Co., 109 Va. 184, 63 S. E. 415.

[2, 3] The plaintiffs were relying upon their right to enforce their claim against the consignees when the bill for them became due on January 1, 1911, and were treating the goods as belonging to the consignees. Up to this time the defendant had performed all the terms and conditions of its contract with plaintiffs, and the plaintiffs were making no claim against the defendant. On October 12th the defendant received notice that the goods had been delivered to the consignees, and so notified the plaintiffs. This information was false, and was subsequently on March 2d following corrected. The plaintiffs based no action upon this false notice. It in no way changed their rights or remedies, unless, perhaps, it induced them to delay their proceeding for a month against the consignees. This false notice was a gratuitous statement at most, made after all the rights and liabilities of the parties had become fixed. It did not create any new liability upon the part of the defendant, who made it in good faith, believing it to be true.

I cannot see, under the circumstances, how it damaged the plaintiffs. The damage to the plaintiffs in no way arose from this notice. The damages were the result of the plaintiffs shipping goods to consignees, who had not ordered them, as it was subsequently determined, and not by reason of this false notice. I do not think that this false notice constituted negligence, inasmuch as at the time it was given the defendant owed no duty to the plaintiffs in respect thereto. The only duty the defendant owed the plaintiffs at this time was the use of ordinary care in keeping the goods safely in its storage warehouse. In Knox v. Eden Musee Co., 148 N. Y. 441, at page 461, 42 N. E. 988, at page 995 (31 L. R. A. 779, 51 Am. St. Rep. 700), the court say:

"To constitute actionable negligence, there must not only be a violation of duty owing by one to another, or to the public, but the injury must be the natural consequence of the alleged negligent act, or one which might reasonably have been anticipated."

· Conceding, however, for the purpose of argument, that the giving of this false notice was negligence, the damage to plaintiffs did not flow therefrom. It flowed from the actions of the plaintiffs themselves.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.